Ruffin, C. J.
 

 The counsel for the plaintiff moved for a great number of instructions in succession, but all presenting different views of the position, that it was fraudulent against Campbell’s creditors in the Bank and Tuton to indulge Campbell so long for the debt,- so as to keep the mortgage on foot, to the hindrance of creditors: all of which we think his Hon- or properly refused, because the
 
 bona fides
 
 of the debt to the Bank was not contested and the delay of the mortgagee to enforce payment is not fraudulent, so as to make his mortgage void, but the creditor may have his remedy in equity or promptly at law by a sale of the equity of redemption. The counsel also moved the court to instruct the jury, that if the money paid to Tuton by Mary Ann Campbell was furnished by her father, then the transaction was fraudulent and she held the legal title in trust for him and the plaintiff might recover.— But the court refused so to instruct the jury; and very properly refused, inasmuch as that transaction occurred several years after this suit was brought.
 

 But upon the principal point in the case, that respecting the right of the defendant to shew, that John Campbell was but a mortgagor, in answer to this action, this court holds a different opinion from that of his Honor. We understand his Hon- or, as not admitting the present defendant to any defence the original defendant could not make, according to the cases of
 
 Gorham
 
 v.
 
 Brenon
 
 2 Dev. 174, &
 
 Belfour
 
 v.
 
 Davis
 
 4 Dev. &. Bat. 300. But he ruled, that Campbell himself might insist on that matter, and therefore the defendant might. Now, we think the point was not open to Campbell, and for that reason that the evidence was improperly received.
 

 It is proper to make the preliminary admission, that the second Sheriff’s deed to the lessor of the plaintiff can have no operation in this action. For, although it has been held, that
 
 *532
 
 the‘provisions of the act of 1812, respecting the form of a "Sheriff’s deed for an equity of redemption,.are but directory, and although we have no doubt, that a Sheriff may make a second deed, if the first be not effectual to pass all he sold, this deed was not evidence in this suit, as it was made a year after the suit was brought. Whatever relation to the time of the sale a conveyance from the Sheriff may have for some purposes, it cannot be carried to the unreasonable extreme of proving the title in an action, that was brought before the deed was made.
 

 The question, then, is, whether the purchaser at 'Sheriffs sale of an equity of redemption may not recover in an action of ejectment against the debtor himself? We think, be may. It seems to us to stand on the same reason with the other cases, in which it is held, that the debtor in execution cannot set up a want of title, legal or equitable, in himself. That has long been settled as the law, in numerous cases.
 
 Thompson
 
 v.
 
 Hodges,
 
 3 Murp. 546,
 
 Gorham
 
 v.
 
 Brenon,
 
 2 Dev. 174,
 
 Duncan
 
 v.
 
 Duncan,
 
 3 Ired. 317. The grounds, on which the doctrine rests, are, that, as he has had the benefit of the sale in the payment of his debts, he ought not to say that he had nothing in the premises, and that he cannot with truth say so, as he had, at least, the possession and enjoyment of the land, and those he ought to give up ; and to recover them is the object of the ejectment. Now, it would seem that precisely the same principle'applies equally to a case, in which the debtor has, in fact, no title — nothing but the possession — and to one in which he has nothing more at law, but has also an equitable interest. Why should his real ownership of the land in equity defeat a recovery from him at law, when without such equitable ownership the recovery could not be resisted? There might be some reason in the defence, perhaps, if the debtors equitable interest was not subject to be sold under execution. But when the act of 1812 authorised the sale of an equity of redemption under a
 
 fieri facias,
 
 it added tenfold to the reason for holding, that the mortgagor and debtor should immediately surrender the possession to the purchaser, and
 
 *533
 
 that the Courts of law should uphold the sale, made under their process, in an action against the debtor himself. Why should the mortgagor be allowed to resist ttie recovery of the purchaser, and retain the possession ? Although, while he was a mortgagor he was not bound to pay rent or account for the profits to the mortgagee, (who is only entitled to his interest,) yet undoubtedly, as between the purchaser and the debtor in execution, the latter is bound to pay the profits to the former from the time of the sale. Then, why allow him to continue a possession, which must be wrongful, and cannot be otherwise ? If it be said, that the plaintiff cannot recover, because upon his own deed he appears to have only au equitable title, the answer is, that it is idle to make a distinction, which may be so readily rendered nugatory by the purchaser taking a deed containing no admission of the mortgage. If there really be a mortgage, nothing more in fact passes than the equity of redemption, whatever may be the form of the deed ; and, therefore, the form ought not to change the respective rights of the parties. We consider, that the act of 1812 makes the equity of redemption, when sold under execution, a legal interest, to the extent, at least, of enforcing it by the recovery of possession from the mortgagor himself.— It may be admitted, that, if the mortgagor were to assign his-equity of redemption, the assignee could not recover from the assignor in ejectment; because at law the equity of redemption is not known as an interest, which may be the subject of a conveyance, but the assignment operates only in equity.— But suppose a statute to be passed, expressly recognising that-interest as the subject of conveyance by the mortgagor, and' authorizing him to sell and convey it by deed of bargain and-sale ; could there be any doubt, that, as against him, the assign-nee would have the right, and that it would be upheld in a Court of law ? Now, that is the substance and effect of the act of 1812, in its operation upon a sale of an equity of redemption by the sheriff; and therefore we perceive no real difference between the application to this and all other cases, alike, of the rule, which concludes the debtor in execution
 
 *534
 
 from disputing the purchaser’s title, and his right to recover Possessi°n him. It is true, the purchaser is obliged to resort to a Court of equity to obtain redemption from the mortgagee; as, against the mortgagee, he is but the as-signee of the mortgagor. But if he be obliged also to go into equity for redress against the mortgagor and to gain the possession from him, the act of 1812, instead of facilitating the redress of the creditors of mortgagors, will embarrass them; for it were better not to allow the sale at law at all) and require the creditor to apply to equity in the first instance— But it is no concern of the mortgagor, how the purchaser and the mortgagee arrange their business. His interest has been terminated by the sale of it under execution, and he is bound in honesty to yield the possession to the purchaser. In New York it is a settled rule, that the mortgagor cannot set up the mortgage against a purchaser under execution against him; and the case of
 
 Jackson
 
 v. Davis, 18 John. 7, resembles the present exactly, as the mortgagee was there also admitted to defend the action, which was original ty brought against the mortgagor, then in possession.
 

 We have assumed all along) that John Campbell had an equity of redemption, subject to be sold; because it was so considered in the Superior Court, and because we think that such was the truth of the case. If he had not that equity, but was a trespasser, the defence on this point fails altogether. But, as we held in
 
 Thorpe
 
 v.
 
 Ricks,
 
 1 Dev. & Bat. Eq. 613, the act of 1812 includes not only express mortgages, but also those that were intended to be securities in the nature of mortgages, and are so held to be by construction of a Court of equity. The judgment against the plaintiff was, therefore, erroneous, and must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per Curiam, Judgment accordingly.