Daniel, J.
The plaintiff, as the assignee in law of all the effects, mentioned in the schedule of Dan Alexander, an insolvent debtor, dated on the 21st day of October, 1841, has brought this action ■ of assumpsit against the Bank, to recover the amount of money, which the one hundred shares of bank stock, mentioned in the said schedule, produced on the sale thereof, made by C. Dewey, and by him placed in the possession of the bank. The plaintiff declares, that the bank had and received the said sum of money to his use. The bank, under the plea of non assumpsit,, resists the demand of all or any part of the monies so paid in by Dewey. First, because D. Alexander, before the date of the assignment of his effects to the plaintiff, to-wit, on the Gth day of January, 1841, had pledged the said stock to one Blackwood, its agent, as collateral security to satisfy a debt of $9,977, then owing by him to the said bank. And secondly, that D. Alexander gave a check for $371 dated on the 15th day of December, 1841, to apply so much of the money then standing in bank to his credit, to the satisfaction of a debt to that amount, which he then owed the said bank; and that the same had been applied accordingly, without any notice at the time to the bank, that Alexander had, before the date of the check, taken the benefit of the insolvent law in Guilford Superior Court. The evidence of the pledge to the bank of the aforesaid stock is to be found in the two deeds described in the case, by the letters A. and B. The plaintiff insists, that these two deeds are void as to him, by force of the act of assembly, (Rev. St. c. 37, s. 24) because they have never been registered. The answer to this objection is, that the statute only declares, that deeds of trust and mortgages shall not be valid against creditors or purchasers, but from the registration. The instruments, marked A. and B. are certainly not deeds of trust, and we think that they are not mortgages : they are, what they profess on their face to be, pledges of stock to secure the payment of the debt *319 therein mentioned. A mortgage of personal property in law differs from a pledge; the former is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in a mortgage of lands ; the latter, a pledge) only passes the possession, or at most is a special property in the pledge, with the right of retainer, until the debt' is paid. A mortgage is a pledge and more, for it is an absolute pledge, to become an absolute interest, if not redeemed in a certain time. A pledge is a deposit of personal effects, not to be taken back, but on payment of a certain sum, by express stipulation, to be a lien upon it. Jones v. Smith, 2 Ves. Jun. 378, 4 Kent’s Com. 138 (3 edit.) 2 Story’s Eq. 227. Generally speaking, a bill in equity to redeem will not lie, in behalf of a pledger or his representatives, as his remedy is at law, upon a tender of the money. 2 Story’s Eq. 298, 1 Ves. 298. We see that there is a very marked difference between a mortgage and a pledge of personal property; and, as the Legislature has not said, that pledges, to be good against creditors and purchasers, must be registered, neither can we declare them to be within the meaning and operation of the aforesaid registry act. We cannot tel!, but what the Legislature designedly left pledges out of the act. It seems to us, therefore, that .the deeds A. and B. are made at the common law, and do not require to be registered to give them effect. The receipt by the bank of so much of the proceeds of the sale of the said stock, as was necessary to satisfy the debt, for which the stock had been pledged, had been received,not to the use of the plaintiff,but to the use of the Bank.
Secondly. The #371, standing in Bank to the credit of D. Alexander, was legally assigned to the plaintiff, before the date of the check given by Alexander to the Bank for that money. The Bank alleges, that it had no notice of this assignment to the plaintiff when the check was received and applied in extinguishing D. Alexander’s *320 debt to that amount then in Bank. The answer to this allegation .is, thafia plea of a purchase for a valuable consideration, without notice, is not available against an adverse legal title to the thing, either in a Court of Law or Equity. It is very plain, that the stock was sold by Dewey and the purchase money received by the Bank with the assent of Alexander, Blackwood, and the Bank; and that the sale of the stock and receipt of the purchase money were legally made,-are facts obliged to be admitted by the plaintiff, before he can be permitted to rely on either the first or third counts in his declaration. But, to whose use the money was had and received by the Bank, is the question now to be decided. There was no evidence in the case, applicable to the second count, even -if assumpsit could be maintained against the Bank, for refusing to transfer stock to a purchaser of it. We are of opinion, upon an examination of the whole case, that all the money received by the Bank, over and above the sum necessary to satisfy the debt and interest mentioned in the deed marked B, was money had and received to the use of the plaintiff,- and no other sums of money. The check given by Alexander, transferred to the Bank no title to the money which was standing there in his name, because it had in law been assigned to the plaintiff before the date of the check. We think that the plaintiff was entitled to recover this money under the third count in the declaration.
We find no authority that a demand was necessary before the plaintiff could sustain his action ; this objection, taken by the defendant, is therefore over-ruled.
Nash, J.
The proceeds of the sale of the stock are claimed by the plaintiff, upon the ground that the transfer to the Bank was void, because the deeds or bonds of Sept. 1839, and Jan. 1841, were not proved and registered, agreeably to the provisions of the Act of Assembly, Rev. Stat. ch. 37, s. 23, 24.
*321 I agree with my brother Daniel, that the deeds or bonds, under which the defendants claim the proceeds of the stock, are valid at common law, and need not be registered to give them effect. I cannot see that the transaction came within the meaning of the Act referred to, and certainly not within its words. The transfer of the stock by Alexander to the Bank was neither a mortgage nor a deed, or conveyance in trust, but was simply what it purported to be, a pledge of the stock. The difference between a mortgage and a pledge, strictly as such, is well known and recognized by the most approved writers. The passages from “ Story’s Equity,” referred to in Judge Daniel’s opinion, fully prove it. A mortgage conveys the entire property in the thing mortgaged conditionally, so that, when the condition is broken, the property, at law, remains absolutely in the mortgagee; but a pledge never conveys the general, but only a special property, to the bailee; and the effect of a failure on the part of the pawner, to pay the money for which it is pledged, is not to convey the entire -property in the thing to the bailee, but to give him a power to dispose of it and pay himself. If he does not do so, but retains the property, the pawner at any time has a right to redeem it. If the debt is paid or the money tendered by the pawner, it is the duty of the bailee to return the thing pawned, and, if he does not, an action at law lies against him, as the whole property i^' re-vested thereby in the pawner. Jones on Bail, p. 91. So, also, it is essential to a pledge, that the possession of the article should accompany it. My opinion, however, is not, in this case, formed so much upon the difference between a mortgage and a pledge, as upon the nature of the property here put in pawn, namely, the certificate of stock: a mode of securing debts to the Bank, known to the Legislature and sanctioned by them. In the Act chartering the Bank of Cape Fear, 2d vol. Rev. St. s. 8, p. 40, in pointing out in what things the corporation shall be permitted to deal, the Act enumerates, “ or in the sale- *322 of goods really and truly pledged for money lent and not redeemed in due time.” This Act was passed in 1804. The charter of the Merchants’ Bank of Newbern was granted in 1834, 2d vol. Rev. Si. p. 69. In the 5th sec., among the fundamental articles of the corporation, it is provided, “ In all cases, in addition to the usual personal security, the stock of directors shall be considered as a pledge, for the re-payment of the money they may borrow, either as principal or security.” And there is the same restriction as tó subjects in which they shall deal, as in the charter of the Cape Fear Bank, expressly including articles pledged. The acts concerning mortgages, to which reference has been made, were passed in 1820 and 1829. Both before and after the passage of these acts, the Legislature recognized the right of the Banks to receive in pawn or pledge, its own stock as collateral security for money loaned it is to be received not in mortgage, or in trust, properly speaking, but in pledge, and subject, of course, to the laws regulating pawns. Nor can any evil possibly result from such air arrangement, to any creditor of the pawner, for the certificate of stock must, in every instance, accompany the transfer, to make it effectual. I cannot therefore persuade myself that the Legislature intended to embrace within its provisions,'upon the subject of mortgages and deeds of trust, such a transaction, as this.
I concur with my brother Daniel in affirming the judgment.