PeaksoN, J.
 

 The legal estate to the lot in controversy, was vested in William and Joseph Carter, as tenants in common. In any point of view, William had the equitable estate in one half, consequently, as to that half, having both the legal and beneficial estate, he had a full title, which passed to the plaintiff as purchaser at sheriff’s sale, and his remedy at law, if he is ousted from the whole, is clear. This half, then, may be put out of the case. .But the plaintiff alledges, that William was also entitled to the equitable estate in the other half, and that it passed to him by the sheriff’s sale, and the object of the bill is to get a conveyance of the legal estate.
 

 The equity is put on two grounds:
 
 First,
 
 that as Sarah Carter paid the purchase money, although the legal title was vested in Joseph Carter, yet, he held in trust for her, and the equitable interest passed to William by her will. Suppose this to be so, the question is, did William have such an equitable interest in this half, as was liable to be sold under execution? This question will be disposed of in connection with the other.
 
 Second,
 
 if Sarah Carter did not pay the purchase money, or if she intend ed it' as a gift to her nephew, then the entire estate vested in William and Joseph as tenants in common ; but as the lot is devised by Sarah Carter to William, and other property of much greater value is given by her to Joseph, William had a right in Equity, to put Joseph to his
 
 *36
 
 election, and to bave it declared that Joseph bad elected, or should be decreed to elect, and in case be took under the will, that he should be decreed to convey the half of the lot to which he was before entitled, to William. Suppose this to be so, the question is, did William have such an equitable interest in this half, as was liable to be sold under execution? As the case comes up on demurrer, if the plaintiff has an equity, in. either aspect, the demurrer must be overruled. So it is necessary to dispose of both questions, and it is convenient to discuss them together. In
 
 Thompson
 
 v. Thompson, I Jones’ Rep. 432, after showing that there is the same difference between an “estate”-and a “ right ” in Equity as afLaw, the opinion proceeds : “No question is made as to the distinction between an “ estate ” and a “ right ” in equity. The grounds of the distinction consists in the difference between a trust, created by the act of the parties, where he who has the legal estate, consents to hold it in trust for the other, and there is no adverse possession or conflict of claims; and a trust created by the act of a Court of Equity, where there is a conflict of claims,, and the party having the legal estate holds adversely, and does not become a trustee until he is converted into one, by a decree founded on fraud or the like. In the former, the
 
 cestui qui trust
 
 has an estate ; in the latter, a mere right.”
 

 By the act of 1812, Rev. Stat. ch. 45, sec. 4, a trust is made liable to sale under an execution, in the same way as if the
 
 cestui qui trust
 
 had the legal estate; the purchaser acquires the legal estate, and the property is to be “held and enjoyed,
 
 freed
 
 and
 
 discharged
 
 from all incumbrances of the person
 
 so seized
 
 or
 
 possessed vn
 
 trust, for the person against whom such execution shall be sued.”
 

 In putting a construction upon the .statute, two considerations present themselves. The object was to put property, held in trust for a debtor, upon the-same footing, in reference to its liability to be sold under an execution, as if the debt- or owned the property itself. There is no reason to suppose that it was the intention of the law-makers, to extend the reach of an execution, in reference to property held in trust beyond that which it had at- common law. “ A right ” to ’proper
 
 *37
 
 ty, is not subject to execution at common law; the debtor must have an “estate”; consequently “aright” to have one declared a trustee, is not subject to execution, under the statute; the debtor must have a subsisting trust- — an “estate” as distinguished from a mere “right in Equity.”
 

 Second.
 
 The statute enacts, that the purchaser shall have the legal estate, and shall hold the property free from all in-cumbrances of the trustee. If the trust be one created by the act of the parties, where he who has the legal estate, has consented to hold it in trust for the other, this is all well enough. But if the party who has the legal title, holds adversely, sets up a conflicting <!jaim, and denies that he is a trustee, it would be downright injustice to take the legal estate from him, and vest it in the purchaser at execution sale, to be “held and enjoyed free and discharged from all incumbrances,” without giving any opportunity to contest the alleged right of the debt- or, and before any .trust has been declared to exist in his favor.
 

 But the concluding lines of the section relieves it from this charge of injustice, “freed from all incumbrances of the person
 
 so seized
 
 or
 
 possessed i/n trust for theperson against whom such execution shall be sued”
 
 Thus taking it for granted that there is an existing trust — an estate, not a mere right.
 

 By way of illustration, take the cases supposed in
 
 Thompson
 
 v. Thompson; a trustee sells land in violation of the trust, the purchaser alleges that he bought for valuable consideration without notice, but a creditor of the
 
 cestui qwi trust
 
 has the land sold under an execution; if this right of the debtor, is liable to execution under the statute, the purchaser at sheriff’s sale, deprives the purchaser from the trustee, of the land, before it has been declared whether he purchased with or without notice ; in other words before he has been converted into a trustee. So, if a trustee buys land, and it is alleged that he used the trust money to pay for it, a creditor of the
 
 cestui qui
 
 trust, can have the land sold at execution sale, befoi e it is ascertained whether the trustee misapplied the trust money or not, and the purchaser at sheriffs sale takes the land free of all incumbrances 1 It is clear a “right in Equity ” is not liable to execution.
 

 
 *38
 
 There are even exceptions to the general rule, that an existing trust, or “estate in equity” is liable to execration. A vendee who has paid part of the purchase money, is considered in Equity as having the estate, yet this trust cannot be sold because of the manifest injustice of taking the legal estate from the vendor, and passing it to the purchaser- So, on© having an equity of redemption is considered in Equity as the owner of the estate, but this trust could not be sold under the 4th section, and it was necessary to pass the 5th section which makes it liable to execution, and the 6th section which directs the sheriff in his deed to set forth, that the land was under mortgage, so as to leave the right of the naoí^agee, unaffected by the sale.
 

 It remains to be seen whether "William Carter, under either aspect of the case made by the bill, had an existing- trust or estate in Equity. Manifestly a right to have it declared by a Court of Equity, that one has made an election to give up li-is own property, or is bound to make an election either to dio s©> or not to take benefit under a will, and to ask-for a decree converting him into a trustee, and requiring him to make a conveyance, is not an estate in Equity. This disposes of one aspect of the case. It seems equally clear, that in the absence of any declaration of trust in the deed, a
 
 right
 
 to have it declared by a Court of Equity, that a tract of land which has been conveyed to A, was purchased and paid for by B, for his own benefit, and to ask for a decree converting A into a trustee, and requiring him to convey to B, is not
 
 an estate in Equity.
 

 To apply this to our case: In reference to the half of the lot now under consideration, the plaintiff alleges that Sarah Carter bought the lot and paid for it with her own money, and for her own use, and devised it to William Carter. Hie deed is made to Joseph Carter, and sets out no trust for Sarah Carter, but recites that the purchase money was paid by
 
 Ohwrles
 
 Carter. Whether Sarah Carter paid the money is an open question; if she did so, whether it was not by way of loan to Joseph or Charles Carter, is an open question; and if she did not lend it to either, whether she did pot iptend, by having
 
 *39
 
 ' he deed made to Joseph, who was her nephew, to make a gift o him, is also an open question. And yet, without having these facts declared, the plaintiff insists on the right to prejudge the matter; have the lot sold under an execution against William, divest the legal title of Joseph, and pass it to the purchaser free from all encumbrances. To allow this, would bring reproach upon the administration of justice in any «country. But it is asked, how are creditors to subject these rights ” of debtors to the payment of their debts ? The reply is, as was said in
 
 Page
 
 v.
 
 Goodman,
 
 8 Ire. Eq. 16.
 
 Thigpen
 
 v.
 
 Pitt,
 
 ante 49, and many other cases. The creditors may have relief by filing a bill in Equity., to have the interest of their debtors declared, and sold under a decree. This is the proper course to take in regard to the alledged rights of William Carter.
 

 There is another view which presents a fatal objection to the bill. If William Carter liad such a trust as was liable to be sold under execution, then the plaintiff, being a purchaser at .sheriffs sale, acquired the legal title, and has a clear remedy at Law, and there is nothing to ask a Court of Equity for. So, take it either way, the plaintiff, asa
 
 purchaser at sherif’s sale,
 
 has no footing in a Court of Equity.
 
 Thigpen
 
 v.
 
 Pitt,
 
 cited above. Bill dismissed.
 

 Pee CueiaM. Decree accordingly.