*89
 
 Pearson, J.
 

 The bill alleges that the debts for which the deed of trust to Ilyman was executed were feigned and co-viuous, and on this ground that deed is impeached as fraudulent and void against creditors. Upon the argument, the plaintiffs’ counsel admitted that all the debts secured by the deed of trust were justly due. This relieves it from impeachment, and it stands as a
 
 liona fide
 
 conveyance, the legal effect of which was to devest the title out of the debtor, John II. Dawson, and transfer it to Ilyman. So, the plaintiffs’ equity depends solely upon the alleged fraud in the subsequent sale under the deed.
 

 This brings up the second ground upon which the plaintiffs seek to subject the property to the payment of their debts, to wit, that John II. Dawson and his mother, the defendant Tempe Dawson, contrived, by collusion, to get the control of the other debts secured in the deed of trust, and thereby suppressed bidding, so that she was enabled, at her own prices, to purchase every single article of the property — land, negroes, horses, ploughs, hoes, &c., that was sold by the trustee, and acquire the title, to the prejudice of the other creditors whose debts could have been made out of the surplus of the property that would have remained unsold after selling enough to pay the debts secured in the deed of trust, had the property not been sold at an under-value by reason of. fraud between the mother and son, whereby it was contrived that she was to get the title and become the ostensible owner, so as to keep off the son’s creditors, but was to let him enjoy and have the use of it.
 

 We are satisfied, from the pleadings and proofs, that there was this collusion between the mother and son, and that the defendant Tempe became the purchaser, and took the property, with the understanding that she was to hold in secret trust for him, in fraud of his creditors.
 

 There is proof that the other creditors secured in the deed of trust were assured that their debts would be paid, and so did not bid. Some of the other creditors, not secured in the trust, were also satisfied, and in that way bought off. But
 
 *90
 
 the fact that there was no serious competition, so that the defendant Tempe bought every single article that was sold, “ speaks for itself,” and leaves no doubt as to the collusion. It is true she took the title from the trustee, and ostensibly went into possession, but the son managed the property, and dealt with it as he saw proper. The fact that he did so in her name, and as her agent, is too flimsy a pretext to deceive any one ; and the wonder is, that the plaintiffs and other creditors did not take legal steps at once in order to subject the property to the payment of the debts. Eor some cause or other they neglected to do so for nearly ten years. The trustee’s sale was in 1842, the bill was filed in 1851. Are not the plaintiffs within the operation of the maxim,
 
 leges vigilantibus non dor-mientibus faetce sunt ?
 
 Or did they have their own pleasure to proceed at any distance of time? — in other words, is not their equity barred by the statute of limitations ?
 

 The plaintiffs’ counsel insisted that, as there is an expressed trust by which the defendant Tempe holds the property for the use of the debtor, the scope of the bill is to subject this trust to the payment of debts, and as there was no adverse holding as between the trustee and
 
 cestui que trust,
 
 the statute of limitations does not apply.
 

 The bill cannot be maintained in this view, for that trust was fraudulent and “ not fit to be enforced in any court, either in favor of the party, his creditors, or any one else and the equity of the plaintiffs, as creditors, is to follow the property in the hands of the holder, and to convert her into a trustee on the ground of fraud. This principle is so well settled that it is unnecessary to discuss it.
 
 Dobson
 
 v. Erwin, 1 Dev. and Bat. 569;
 
 Gowing
 
 v.
 
 Rich,
 
 1 Ire. 553;
 
 Page
 
 v. Goodman, 8 Ire. Eq. 20;
 
 Rhem
 
 v.
 
 Tull, 13
 
 Ire. R. 57. So it is clear that the plaintiffs’ equity is to convert the defendant Tempe into a trustee ; and the question is, does the statute of limitations apply to a trust of that kind?
 

 All trusts are either
 
 by agreement of the parties,
 
 as where there is a declaration to that effect, or where a trust is implied or presumed, as a resulting trust, or where one buys land and
 
 *91
 
 lias tlie title made to a third person; or
 
 against the assent of the party who has the legal
 
 title, he being converted into a trustee on the ground of fraud, either express, as in our case, or by construction, as where one takes a title from a trustee with notice* and the very many cases of constructive fraud to be met with in our books. In the former there is no adverse holding, or conflict of claim between the trustee and
 
 eestui que trust:
 
 the one holds, by agreement, the legal title for the other, who has the
 
 estate in equity.
 
 In the latter there is an adverse holding, and conflict of claim: the one holds the legal title for himself, or some third person, who has a privity, or is in collusion with him (as in our case) and the other lias but a right in equity or chose in action. This distinction is discussed and explained in
 
 Thompson
 
 v. Thompson, 2 Jones’ Rep. 432;
 
 Nelson
 
 v. Hughes, 2 Jones’ Eq. 33, and “ needs no further explication.”
 

 In
 
 Edwards
 
 v.
 
 The
 
 University, 1 Dev. and Bat. Eq. 325, it is settled upon principle, and upon authority of the cases, that the statute of limitations protects one who has the legal title and is sought to be' converted into a trustee against his assent. Such is assumed to be settled doctrine in
 
 Uzzle
 
 v. Wood, 1 Jones’ Eq. 227. The Court say, “When a trust is not created by agreement of the parties, but the person having the legal title is converted by a deeree into a trustee, on the ground of fraud, he may insist that his possession was adverse, and protect himself under the statute of limitations.” The opinion then shows that the plaintiffs are within the saving in favor of the femes covert. In our case the attempt is to convert the defendant Tempe into a trustee, on the ground of fraud, and why may she not insist that her possession was adverse to the plaintiffs, and protect herself from their right in equity, by the statute of limitations?
 

 The fact that, in our case, the title was transferred from the debtor by a valid conveyance, distinguishes it from
 
 Hawkins
 
 v.
 
 Alston,
 
 4 Ire. Eq. 137, witli which, in the argument, it was assumed to be “ almost identical,” for there the. deed of
 
 *92
 
 trust was successfully impeached, as fraudulent, and is treated by the Court as void against creditors.
 

 This distinction is a complete answer to the argument of. the plaintiffs’ counsel, and makes
 
 Dobson
 
 v. Erwin, 4 Dev. and Bat. 201,
 
 Foster
 
 v.
 
 Woodfin,
 
 11 Ire. Rep. 359,
 
 Pickett
 
 v. Pickett, 3 Dev. Rep. 6, and the other cases cited, inapplicable.
 

 It is true, as established by these cases, that when a debtor makes a fraudulent deed, it cannot avail the donee as against creditors, either in respect to the statute of limitations, or in any other way ; because, as against them,
 
 it is void and of no effect.
 
 Upon the same principle, a parol gift of a slave cannot be used so as to call the statute of limitations into operation ; because the gift is void and of no effect. In all these cases the title remains in the donor; but in our case, the deed of trust, being valid, passed the title from the debtor and brings it within the principle of another class of cases where the title has passed out of the debtor, or has never been in him ; and it is held that the statute of Elizabeth and the Act of 1812, have no application, and the creditor is left to his redress in Equity, by following the fund, and converting the holder of the legal estate into a trustee.
 
 Gowing
 
 v.
 
 Rich,
 
 1 Ire. 553;
 
 Gentry
 
 v.
 
 Harper,
 
 2 Jones’ Eq. 177;
 
 Jimmerson
 
 v. Duncan, 3 Jones’ Rep. 538; in which last case
 
 Dobson
 
 v. Erwin, 1 Dev. and Bat. Rep. 569,
 
 Morris
 
 v. Allen, 10 Ire. Rep. 203, are distinguished, on the ground that the sale by the sheriff being successfully impeached for fraud between the debtor and purchaser, it was void, and the legal title still remained in the debtor.
 

 Upon the same distinction, all that was said on the argument, in reference to a supposed analogy to the doctrine by which, at law, a crédito)-, under certain circumstances, is enabled to reach property in the hands of a fraudulent donee, by the fiction of his being executor
 
 de son
 
 tort, has no application ; for that doctrine only applies where the conveyance is void,.as against the creditor, so as to leave the title in the debtor, and upon his death, the fraudulent donee is assumed
 
 *93
 
 to be, as against creditors, an intermeddler with the property of the deceased debtor. But if the property is transferred, so that even, as against creditors, the title is out of the debtor, of course, creditors cannot treat it as still being his, by force of any statute, in his life-time, or under the doctrine of executor
 
 de son
 
 tort, after his death.
 

 The fallacy of the argument consists in not adverting to the distinction above referred to, and in treating our case as if the title still remained in John H. Dawson as against the plaintiff and his other creditors, notwithstanding the deed of trust to Hyman ; whereas, the legal effect of that deed was to devest the title.
 

 The plaintiffs’ counsel next assumed the position, that the statute of limitations is only allowed to protect one, who is sought to be converted into a trustee, on the ground of
 
 constructive fraud,
 
 and not one who has been guilty of wilful,
 
 intentional and actual fraud,
 
 and he refers to cases where a deed has been procured by fraud or undue influence, and to
 
 Logan
 
 v. Simmons, 3 Ire. Eq. 481, where a wife had executed a deed of gift, on the eve of her' marriage, in fraud of the husband’s marital rights, and the fraudulent donee was converted into a trustee, and not allowed the protection of the statute of limitations, although he had been in possession for many years.
 

 This position is opposed to principle and to the authorities. The reason why the statute applies to trusts, against the assent of the party, is, that there is an adverse holding and conflict of claim, and the party in possession being exposed to the suit of the other, the latter is required, by the policy of the statute of limitations, to assert his right within a limited time. This reason applies with as much force, when the fraud is wilful and actual, as when it is raised by construction. In
 
 Uzzle
 
 v.
 
 Wood, supra,
 
 the fraud was wilful, actual, and deliberately carried out. In
 
 Edwards
 
 v.
 
 The The University,
 
 supra, the legal title was obtained by gross fraud, i. e., by perjury, of which the defendant had notice; for notice to the agent, is notice to the principal. In short, no case recognises the
 
 *94
 
 distinction upon which this position is taken. The cases referred to, in the argument, do not involve the doctrine of trusts, but the
 
 convey anees were void
 
 on the ground of fraud, and being void, could have no effect upon the principle above referred to, of a parol gift of slaves, or a gift void as to creditors. So, in
 
 Logan v. Simmons,
 
 the deed of the wife was void, and of no effect against the husband.
 
 Blanchard
 
 v. McLaughlin, 2 Car. L. Reps. 402, has no bearing on the question. The statute of limitations is not alluded to. The statement is not made in reference to dates, and the death of the administrator took place pending the action.
 
 Foscue
 
 v.
 
 Foscue,
 
 2 Ire. Eq. 321, is not in point. The limitation over, after the life-estate, was void, and the delivery of the negro by John E. Eoscue, the executor, to the guardian of Dorcas Eoscue, being without consideration, did not pass the title, but merely amounted to a bailment, and the Court hold that the executor and his fraudulent alienee (bailee) were liable.
 

 Tate v. Conner,
 
 2 Dev. Eq. 224, was a bill for the specific performance of a contract, and to convert the assignee of the vendee into a trustee, on the ground of notice. There had been a delay of
 
 thirty-four
 
 years, which raised a pre-. sumption that the plaintiff’s equity was satisfied or abandoned, and on this, the decision is put. The opinion has a dictum to this effect: “The statute of limitations does not protect the defendants. The case does not come within it, 'the
 
 relief going
 
 on the vendor’s being a trustee, in this Court, for the vendee. But equity, itself, respects time, when the trust is not express, because it is difficult to ascertain the truth of old transactions.” This dictum proves too much ; for the fraud of the purchaser from the vendee, was
 
 onhj constructive
 
 on the ground of notice. After full research, no case is found, where it is held that the statute of limitations does not protect the person, holding possession under the legal title, if the conveyance take effect, so as to pass the legal title, and make it necessary to convert the party into a trustee against his .assent.
 

 It will be declared to be the opinion of the Court, that the
 
 *95
 
 plaintiffs’ right, in Equity, is barred by the statute of limitations, and the adverse possession of the defendant Tempe. Bill dismissed.
 

 Pee Cueiam. Decree accordingly.