## MARGARET EVANS v. M. F. BRENDLE.

(Filed 14 March, 1917.)

### 1. Judgments—Decrees—Middle Names—Correction.

Where a decree, in a proper action, converts a deed absolute upon its face into a mortgage or deed in trust to secure borrowed money, and it is ascertained that therein the money has been paid, and the mortgagor, holding the equitable title with the naked legal title outstanding, has directed the decree to be made to his wife, but whose middle initial has therein been incorrectly stated by mistake, but her identity as the one intended established as a fact: *Held*, the variation in the middle letter of the name is immaterial, the law recognizing only one Christian name, and it is not required that suit be first brought to correct the decree.

### 2. Same—Naked Legal Title—Transferee of Title—Parties.

As to whether the decree in this case had the effect of vesting the legal title in the holder of the equitable title, not declaring in conformity with the requirements of Revisal, secs. 566, 567, that "it shall be regarded as a deed of conveyance," *quære;* but it appearing from the decree that a mere naked title was outstanding in a mortgagee, and that the mortgage debt had been paid: *Held*, the mortgagor, the owner of the equitable title, had a right to demand the conveyance of the legal one, or that it be decreed to himself or to such other as he might designate, in this case his wife, though she had not been made a party to the suit, and their deed would pass a complete title to their purchaser.

### 3. Judgments—Equity—Trusts—Estates — Rights — Execution — Deeds and Conveyances.

Where it is shown on the face of the writing that one person holds the legal title to lands in trust for another, in whole or in part, the latter has an equitable estate, which is subject to execution under judgment against him, though it may be necessary for him to enforce his claim in equity; but where there is no declaration of the trust appearing in the instrument, and the holder of the legal title denies the equitable one, requiring a decree to enforce it, the latter, until the decree is entered in his favor, has a mere right, and no estate subject to execution.

### 4. Same—Purchaser.

Where pending a contested suit to declare a deed absolute upon its face into a mortgage, a judgment has been obtained against the one asserting his right, and the lands sold under execution, and thereafter the equity sought in the suit has been established by decree of court: *Held*, the purchaser at the execution sale, or his grantee, acquired no title to the lands, as the judgment debtor had no estate in the lands at the time of the sale.

CLARK, C. J., dissenting; BROWN, J., concurring in the dissenting opinion.

CIVIL ACTION, tried before *Cline, J.,* at Spring Term, 1915, of SWAIN.

This is an action to recover land, both parties claiming title under Lee Fuller.

On 28 January, 1896, Lee Fuller executed a deed to H. T. Jenkins purporting to convey said land to him in fee.

In the spring of 1898 he commenced an action, to which his wife, S. J. Fuller, was not a party, alleging that the deed of 28 January, was intended as a security for a debt, and that certain clauses had been omitted by mistake, and at July Term, 1902, of Swain Superior Court the following judgment was rendered in said action:

## LEE FULLER *v.* HENRY T. JENKINS.

This cause coming on to be heard on motion of the plaintiff for judgment in accordance with the judgment and opinon of the Supreme Court in this action:

It is ordered, adjudged, and decreed by the court that it appearing and having been made to appear that the plaintiff paid into the office of the clerk of the Superior Court of Swain County the sum of $9.95 the amount which was required to be paid by the opinion of the Supreme Court, that the defendant H. T. Jenkins shall execute and deliver to S. H. Fuller, her heirs, a deed conveying the title to the land, which is described as follows:

"Beginning on a stone in the ford of the branch, it being the Jones corner, and runs south 49½ west 22 poles to a stake with pointers; thence south 32 east 12 poles to a small black oak; thence south 32 east with Charles Jenkins' line 26 poles to a stake on the north side of a large gully; thence north 83 east  .  .  .  poles to a stake in the branch; thence north 15 west 23 poles to a stake in the branch; thence down the branch as it meanders to the beginning, containing 11½ acres, situated in Swain County, Charleston Township."

It is further ordered, adjudged, and decreed by the court that the title to the said tract of land be and the same is hereby divested out of the defendant, H. T. Jenkins, and that the title to the same is hereby vested by this decree in said S. H. Fuller and her heirs.  It is further ordered and adjudged by the court that the plaintiff have and recover of the defendant H. T. Jenkins, and his surety of his defense bond, Charles Jenkins, the cost incurred in this action, to be taxed by the clerk.

(Signed)   M. H. JUSTICE.

On 15 January, 1903, Lee Fuller and wife, S. J. Fuller, executed a deed to the.plaintiff purporting to convey said land in fee.

The judge finds as a fact that Lee Fuller directed his counsel who drew the decree at July Term, 1902, to convey this land to Fuller's

wife, S. J. Fuller, but by mistake he named S. H. Fuller in the decree. The judge also finds that the person intended was Josephine Fuller, the wife of Lee Fuller, who had by name of Josephine Fuller joined in the conveyance to Henry T. Jenkins on 28 January, 1896, and that the intention was to convey the land to her by this decree, and that S. J. Fuller and Josephine Fuller are one and the same person and that she is the person who by mistake was named as S. H. Fuller in said decree, and that she has never been known as S. H. Fuller, but by mistake in drawing the decree she was designated S. H. Fuller instead of S. J. Fuller.

In the meantime judgment had been obtained 9 January, 1900, in the Federal Court against Lee Fuller on a distiller's bond, which judgment was docketed in Swain, 21 February, 1900. This tract of land was sold under execution on said judgment on 7 May, 1900, at which sale the United States became the last and highest bidder and the deed was made accordingly, 23 May, 1900, and duly registered. On 11 March, 1900, under proceedings in accordance with law, the Commissioner of Internal Revenue conveyed said tract to the defendant M. F. Brendle.

On these facts judgment was rendered in favor of the plaintiff, and the defendant excepted and appealed.

*Frye & Frye for plaintiff.*
*Bryson & Black for defendant.*

ALLEN, J. It was contended before us that the decree in the action of *Lee Fuller v. Jenkins* did not carry the title to S. J. Fuller, because of the mistake in the second initial, and that it would first be necessary to bring an action to correct the decree. This is unnecessary under our system of procedure, combining legal and equitable remedies. As it is found as a fact that S. J. Fuller was intended when by mistake S. H. Fuller was named, and that S. J. Fuller, the party named, is Josephine Fuller, the wife of Lee Fuller, who joined in the conveyance to Jenkins in 1896, and who, with her husband, made the subsequent deed to the plaintiff in January, 1903, this is sufficient if the grantee (by whatever name) obtained the title under such decree. The name used is merely a designation to identify the party, and when that identity is established a variation in name, and especially a difference in the middle letter, as S. H. Fuller instead of S. J. Fuller, is immaterial.

In Words and Phrases (Second Series), under the title "Name," it is said: "The common law recognizes but one Christian name, and a middle initial may be dropped or changed at pleasure." It is further said: "In law the name of a person consists of one given name and one surname."

The plaintiff in her amended complaint sets out the decree of 1902 as a part of her title, and alleges that it had the effect of passing to the wife of Lee Fuller a perfect equitable title, if not a legal title, and to these allegations the defendant makes no answer, nor does he allege that the direction in the decree to make the title to the wife was fraudulent.

There is also no evidence of an adverse possession by the defendant and those under whom he claims prior to 1909, about five years before suit brought; so that there is no evidence of seven years adverse possession under color.

There are, therefore, two questions, which are determinative of the appeal:

(1) Did the wife of Lee Fuller acquire a legal or equitable title to the land in controversy under the decree of 1902?

(2) Did the sale by the marshal of the United States, under which the defendant claims, pass a legal or equitable title to the purchaser?

The plaintiff may maintain her action against the defendant upon an equitable title (*Watkins v. Mfg. Co.,* 131 N. C., 537, and cases cited), and if the decree vested such a title in her grantor, and it was not divested by the sale by the marshal, which has the legal effect of a sale under execution, she is entitled to recover; and, on the other hand, if the grantor of the plaintiff acquired no title, legal or equitable, under the decree, or if there was such title and it was divested by the sale, she cannot recover.

It is doubtful if the decree had the effect of vesting the legal title in the wife of Lee Fuller under the statute (Revisal, secs. 566-7), because of the failure to declare that it "shall be regarded as a deed of conveyance" (*Morris v. White,* 96 N. C., 93), although the authority cited appears to give a narrow construction to the statute, and to attach more importance to the section declaring the effect of the decree than to the one prescribing its form; but however this may be, it appears from the record in the action of *Fuller v. Jenkins* that Jenkins, by force of the decree, held the legal title in trust to secure an amount due him, and then in trust for Lee Fuller, and that the amount due was paid, and this left the bare legal title in Jenkins and the beneficial interest and equitable estate in Lee Fuller, which he had the right to direct should be vested in his wife, although she was not a party. *Testerman v. Poe,* 19 N. C., 103; *Campbell v. Baker,* 51 N. C., 256; *Ward v. Lowndes,* 96 N. C., 381.

The last case cited was that of a purchase at a judicial sale by the husband, and a direction by him to make title to his wife, who was not a party, and the Court says: "The purchaser of the land, Lowndes, directed the deed for it to be made to his wife, and the administrator

did so make it. This is made a gound of objection by the plaintiffs. It seems to us to be wholly without merit. The purchase money was paid as required by the order of the court, and the administrator was directed to make title to the purchaser. Why might he not make it to such person as the purchaser directed—to his wife? His power to convey to the purchaser was complete; the purchaser was entitled to have the deed made to him. Why not to have it made to such person as he might indicate? We can see no legal reason why he was not." The fact that the deed was not executed only effects the legal and not the equitable title.

We are, therefore, of opinion that the decree vested the equitable title in the wife of Lee Fuller; but if this was not so, the equitable title was in Lee Fuller and passed to the plaintiff under the deed of Lee Fuller and wife.

Did the purchaser at the sale by the marshal acquire a legal or equitable title? and this depends on whether Lee Fuller had at that time, two years before the decree in *Fuller v. Jenkins,* an estate in the land subject to sale under execution, or a mere right.

The distinction between a right to have an equity established and enforced, which is not the subject of sale under execution, and an equitable estate, which may be sold, if "simple and unmixed," that is, one which entitles the owner to call for the legal title, is well established. *Thompson v. Thompson,* 46 N. C., 38; *Bond v. Hilton,* 51 N. C., 181; *Nelson v. Hughes,* 55 N. C., 36; *Taylor v. Dawson,* 56 N. C., 91; *Hinsdale v. Thornton,* 75 N. C., 383; *Henley v. Wilson,* 77 N. C., 218; *Cedar Works v. Lumber Co.,* 168 N. C., 396.

The Court says in the first of these cases: "The ground of distinction consists in the difference between a trust created by the act of the parties, where he who has the legal estate consents to hold it in trust for the other, and there is no adverse possession or conflict of claims, and a trust created by the act of a court of equity, where there is a conflict of claims, and the party having the legal estate holds adversely and does not become a trustee until he is converted into one by a decree founded on fraud, or the like. In the former the *cestui que trust* has an estate; in the latter there is a mere right"; in the second, "In equity, where the trust is by agreement of the parties, we say the *cestui que trust* has the *estate;* but where a decree is necessary, in order to convert one into a trustee against his consent, the party has a mere *right";* in the third, " 'A right' to property is not subject to execution at common law; the debtor must have an 'estate'; consequently, 'a right' to have one declared a trustee is not subject to execution under the statute; the debtor must have a subsisting trust—an 'estate'—as distinguished from a mere 'right in equity' "; in the fourth,

"All trusts are ether *by agreement of the parties,* as where there is a declaration to that effect, or where a trust is implied or presumed, as a resulting trust, or where one buys land and has the title made to a third person; or *against the assent of the party who has the legal title.* . . . In the former there is no adverse holding or conflict of claim between the trustee and *cestui que trust;* the one holds by agreement the legal title for the other, who has the *estate in equity.* In the latter there is an adverse holding and conflict of claim; the one holds the legal title for himself or some third person, who has a privity, or is in collusion with him (as in our case), and the other has but a right in equity or chose in action"; in the fifth, "Where one has only a *right in equity* to convert the holder of the legal estate into a trustee, and call for a conveyance, the idea that this is a *trust estate,* subject to sale under *fi. fa.,* is new to us. True, his right to call for the legal estate is not subject to any further consideration than proof of the facts alleged in support of his right, but there is no *trust estate* until the decree declares the facts and the court declares its opinion to be that the one party shall be converted into a trustee for the other. It follows that the party has no estate subject to execution sale until the decree has vested an equitable estate in him," and the other cases cited are to the same effect.

The principle clearly deducible from these authorities is that if it appears on the face of the writings that the legal title is in one, but that it is held in whole or in part for the benefit of or in trust for another, the latter has an estate, although he may have to go into a court of equity to enforce his claim; but if there is no declaration of the trust, and the holder of the legal title denies the right, and the one claiming a beneficial interest is compelled to invoke the aid of a court of equity to establish the facts upon which his right depends, he has no estate until the decree is entered in his favor.

We repeat here the language of *Pearson, C. J.,* in *Bond v. Hilton,* that "When a decree is necessary in order to convert one into a trustee against his consent, the party has a mere right," and in *Hinsdale v. Thornton,* "There is no *trust estate* until the decree declares the facts and the court declares the opinion to be that the one party shall be converted into a trustee for the other. It follows that the party has no estate subject to execution sale until the decree has vested an equitable estate in him."

At the time of the sale by the marshal the title was in Jenkins, who held under a deed, in which there was no declaration of a trust or other evidence of an equity, and who denied that he held the title as a security; a decree was necessary to establish the facts upon which the right of Lee Fuller rested; the sale was two years before the entry

of the decree, and it follows that Fuller had at that time a mere right, which was not subject to sale,·not an estate, and that the purchaser acquired no title; and this is in line with the policy of our law which discourages the sale of uncertain and speculative interests.

The title was in Jenkins under a deed absolute, and there was nothing on the record to suggest that Fuller had either right, title, interest, or equity in the land. An action was pending in which Fuller alleged that the clause of defeasance had been omitted from the deed to Jenkins by mistake and that it was intended as a security for debt, and this was denied by Jenkins. It was under these conditions the sale was made, when Fuller had nothing for sale except a lawsuit, and it is not surprising that the purchase price was $1, which is less than 9 cents per acre for the land in controversy.

We, therefore, hold that the plaintiff has at least an equitable estate, and that as the defendant acquired no title under the sale by the marshal, she is entitled to recover.

There is much authority in support of the position that if Fuller had an equitable estate it was not one subject to sale under execution, because not a simple equity (*Gillis v. McKoy*, 15 N. C., 174; *McGee v. Hussey*, 27 N. C., 258; *Battle v. Petway*, 27 N. C., 578; *Williams v. Council*, 49 N. C., 214; *Tally v. Reid*, 72 N. C., 337; *Love v. Smathers*, 82 N. C., 373; *Mayo v. Staton*, 137 N. C., 685), and there is also authority that the act of 1812 includes all equities of redemption (*Thorpe v. Ricks*, 21 N. C., 618; *Davis v. Evans*, 27 N. C., 534; *Doak v. Bank*, 28 N. C., 330; *Frost v. Reynolds*, 39 N. C., 498), although these cases are based on *Thorpe v. Ricks* in which the right to redeem was in writing; but it is not necessary to discuss this question, as there was no *estate* in Fuller at the time of the sale.

Affirmed.

CLARK, C. J., dissenting: This was an action of ejectment. The parties waived a jury trial and agreed that the judge should find the facts and apply the law thereto and render judgment. It was conceded that both parties claimed title under Lee Fuller as the common source. The defendant admitted that he was in possession, holding adversely to the plaintiff.

In 1896 Lee Fuller was the owner in fee of the *locus in quo* (11½ acres of land). On 28 January, 1896, he executed to H. T. Jenkins a deed which upon its face purported to be in fee, conveying to him the said tract, which deed was duly registered. To Spring Term, 1898, of Swain he brought an action against Jenkins to have the said deed declared a mortgage. Judgment was rendered in favor of defendant at July Term, 1901, of Swain, but on appeal this Court held, in *Fuller*

*v. Jenkins,* 130 N. C., 554, opinion filed 27 May, 1902, that said deed, upon the facts found, was a mortgage. When the opinion went down, by arrangement between the parties the debt was settled, and a judgment was entered at July Term, 1902, of Swain, conveying the title to the wife of Lee Fuller, who was not a party to the action, and, so far as it appears, without any consideration. The decree did not direct that it should be recorded as a conveyance, and, besides, Revisal, 566, 567, authorizes such decree only as to a party or *cestui que trust,* and Lee Fuller's wife was neither.

In the meantime judgment had been obtained, 9 January, 1900, in the Federal court against Lee Fuller on a distiller's bond, which judgment was docketed in Swain 21 February, 1900, and was a lien from that date. Revisal, 576. This tract of land was also levied upon 27 March under execution from the Federal court on that judgment, and after due advertisement was sold on 7 May, 1900, at which sale the United States became the last and highest bidder and the deed was made accordingly 23 May, 1900, and duly registered 11 June, 1900. On 11 March, 1909, under proceedings in accordance with law, the Commissioner of Internal Revenue conveyed said tract to the defendant M. F. Brendle, which deed was duly recorded in Swain 2 April, 1909. The levy and return of sale merely mentions the "11½ acres of land, the property of Lee Fuller." But docketing the judgment gave the lien without describing any property, and the conveyance by the United States marshal to the United States and the later conveyance to the defendant sufficiently described the property, which is admitted to be the *locus in quo,* and both these deeds were duly registered.

The judge finds as a fact that Lee Fuller directed his counsel who drew the decree at July Term, 1902, to convey this land to Fuller's wife, S. J. Fuller, but by mistake he named S. H. Fuller as the grantee. The judge finds as a fact that the person intended was Josephine Fuller, the wife of Lee Fuller, who had by name of Josephine Fuller joined in the conveyance to Henry T. Jenkins on 28 January, 1896, to release her dower, and that the intention was to convey it to her by this decree, and that S. J. Fuller and Josephine Fuller are one and the same person, and that she is the person who by mistake was named as S. H. Fuller in said decree, and that she has never been known as S. H. Fuller, but by mistake in drawing the deed she was designated S. H. Fuller instead of S. J. Fuller.

On 15 January, 1903, Lee Fuller and wife, S. J. Fuller, conveyed said tract of land to plaintiff Margaret Evans, which was duly recorded in Swain.

It was earnestly contended before us that the decree conveying the property to S. H. Fuller, even though S. J. Fuller was intended, did not

carry the title, and that it would first be necessary to bring an action to correct the deed. This is unnecessary under our system of procedure combining legal and equitable remedies. As it is found as a fact that S. J. Fuller was intended when by mistake S. H. Fuller was named, and that S. J. Fuller, the party named, is Josephine Fuller, the wife of Lee Fuller, who joined in the conveyance to Jenkins in 1896, and who made the subsequent deed, her husband being joined, to the plaintiff in January, 1903, this is sufficient if the grantee (by whatever name) obtained the title under such decree. The name used is merely a designation to identify the party, and when that identity is established a variation in name, and especially a difference in the middle letter, as S. H. Fuller instead of S. J. Fuller, is immaterial.

In Words and Phrases (second series), under the title "Name," it is said: "The common law recognizes but one Christian name, and a middle initial may be dropped or changed at pleasure." It is further said: "In law the name of a person consists of one given name and one surname."

In this State our statutes have indicated the comparative unimportance of an exact identity in name when the identity of the person is shown. For instance, it is provided that if the name of a payee is wrong, Revisal, 2192; or if a defendant in a civil action is erroneously named, this may be corrected by amendment, Revisal, 510; and in criminal actions, if the defendant is wrongly named, upon his making a plea to that effect, instead of quashing the indictment the court will change the name to accord with the defendant's plea. There are many other instances showing that the question depends upon the identity of the person and not the accuracy in naming the person. When a woman marries she changes her surname in this and many other countries (though not in Spain and other Spanish-speaking countries), and usually substitute the initial of her maiden name for the former middle initial. In England when a man is raised to the peerage his name is changed, as when John Churchill became Duke of Marlborough, or John Scott became Lord Eldon. A pope on his election always changes his name.

A young man who obtained his license to practice law and was elected to the Legislature as Thomas Carter Ruffin became Chief Justice of this Court as Thomas Ruffin. In the same way Stephen G. Cleveland became Governor of New York and President as Grover Cleveland. He who graduated at college as Thomas W. Wilson became Governor of New Jersey and President of the United States as Woodrow Wilson, and Hiram U. Grant, having been accidentally misnamed in his appointment to West Point as Ulysses S. Grant, bore that name as commander in chief of the armies and President of the United

States. Under his *non de plume* Mark Twain became famous, but was comparatively unknown as Samuel L. Clemens; so Voltaire's real name was Arouet, and Moliere's true name was Poquelin. Among numerous other instances was the private soldier, Victor Perrin, who became Marshal Victor, and another of Napoleon's marshals, Jean Baptiste Jules Bernadotte, ascended the throne of Sweden and Norway as Charles XIV, John. These and numerous other cases instance the correctness of the common-law rule that it is the identity of the person and not the identity of the name which governs. The finding of the judge settles that is was Josephine Fuller who was intended as grantee, instead of S. H. Fuller, in the decree of the court at July Term, 1902.

The decree, however, attempting to convey title to the wife of Lee Fuller did not have any effect, for it is not authorized by the statute, Revisal, 566, 567, because of the failure to declare that it "shall be regarded as a deed of conveyance." *Morris v. White,* 96 N. C., 93, which holds that a decree does not operate as a conveyance unless it expressly declares that it shall be so regarded. In that case it is said: "It is essential that it shall so declare to give it the full effect of a proper conveyance of the land. It seems probable that the court intended that it should have such effect, but it is not sufficient for that purpose. Such statutory provisions must always be strictly observed as to their essential provision."

The plaintiff must recover upon the strength of her own title; and this alleged conveyance by virtue of the decree of the court is invalid for the further reason that it has not been registered in the manner required by Revisal, 568, which provides: "The party desiring registration of such judgment shall produce to the register a copy thereof, certified by the clerk of the court in which it is enrolled under the seal of the court, and the register shall record both the judgment and certificate." The attempted certificate of the clerk upon which his attempted registration was had shows that there was no compliance with the language of the statute, Revisal, 568, and it was error to admit it in evidence. There is no seal of the court attached, and the certificate does not certify that it is made "under the seal of the court," but only "Witness my hand and official signature." The judgment not having been properly recorded would not avail the plaintiff, even if color of title, *Janney v. Robbins,* 141 N. C., 400; and the plaintiff cannot allege color of title, for she has shown no possession at any time in herself or in S. J. Fuller. Even if the court had been authorized to render such judgment, it had no authority to do so, for two distinct reasons: There were only two parties to the action in which this judgment was rendered, Lee Fuller and H. T. Jenkins, and the purpose of that action was to have a certain deed, which was upon its face a conveyance in

fee, declared a mortgage and a reconveyance to plaintiff ordered. On reference to the decision of this Court in *Fuller v. Jenkins,* 130 N. C., 554, it will be seen that judgment was rendered for defendant in the court below, which was reversed here, with a direction that "The defendant (Jenkins) should reconvey, and in default of payment by plaintiff (Lee Fuller) of balance due by a day named, there should be a foreclosure. Upon the certificate of this judgment of this Court nothing remained to be done by the Superior Court but to enter judgment in accordance with this opinion. Instead of complying, the lower court attempted to adjudicate and vest the title in one S. H. Fuller, who was not a party to the action nor had, in so far as it is shown, any right or interest therein. Such action was not authorized and was not color of title, even if the plaintiff had shown possession.

Moreover, such judgment decreeing title to be conveyed to one not a party to the action is unwarranted by the statute, Revisal, 586, which provides that the court may enter such judgment only as to "parties to the action unless the property is to be held in trust for another."

This method of ordering a decree of court to operate as a conveyance of the legal title as if by deed is purely statutory, and, as said in *Morris v. White, supra,* there is no validity in cases provided by the statute, Revisal, 566, even when its terms are strictly complied with, which was not done here, for the decree does not provide that it "shall be regarded as a deed of conveyance," nor was it certified and registered as required by the statute, nor was it made in favor of a party to the action.

The wife of Lee Fuller was not a party to the action nor was the title directed to be conveyed to her in trust for another. This statute was passed in consequence of an instance in Hertford County where the court having ordered a defendant to execute a deed, he refused to obey and lay in jail under an attachment for contempt until this statute was passed. It was enacted to provide for such cases and for cases in which the parties directed to pass the title are out of the jurisdiction of the court or are minors or *non compos.* The party to whom such title could be made under such decree of the court was specified to be "parties to the suit," or one who is named as trustee for such person. The wife of Lee Fuller, therefore, was not one in whose favor such decree could direct the title to be conveyed.

Besides, the absolute invalidity, for the reasons given, of the decree to put the title in S. H. Fuller, the judgment of this Court which held that a conveyance by Lee Fuller to H. T. Jenkins, 28 January, 1896, was a mortgage necessarily decreed that it was a mortgage on the date of its execution, for it was not based on anything occurring thereafter, and, therefore, when the judgment of the Federal court was

docketed in Swain County and this tract of land was sold thereunder 7 May, 1900, Lee Fuller held the land subject to the mortgage of $30 by virtue of the agreement made at the time the deed was executed, as held by this Court. The interest of Lee Fuller was, therefore, not a mere right in equity, but an equity of redemption, which this Court held entitled him to reconveyance upon payment of the $30 with interest from the date of the deed. Such equity of redemption was subject to sale and was conveyed by the deed to the United States for such property. Revisal, 629 (3); *Davis v. Evans,* 27 N. C., 525; *Mayo v. Staton,* 137 N.. C., 670. The only legal effect of the judgment entered at July Term, 1902, of the court below upon the certificate from this Court was an acknowlegment by Fuller and Jenkins that the encumbrance had been paid off. The equity of redemption which passed by the execution sale against him thereupon became the unencumbered title which later passed to the defendant by the deed from the Commissioner of Internal Revenue under the authority of the United States when the defendant took possession, which he still holds. By the decision of this Court Fuller had the right to call upon Jenkins, at the very time the sale was made under execution, to reconvey this property upon payment of the $30 and interest.

The whole subject is fully discussed in *Mayo v. Staton,* 137 N. C., 670, which holds that while a mixed trust cannot be sold under execution, "an equity of redemption, whether created by mortgage deed to the creditor or to a third person, with or without power of sale, may be sold under execution." The Court, in *Fuller v. Jenkins,* 130 N. C., 555, held that though the mortgage clause had been omitted this was a mortgage *ab initio,* and this made the interest of Fuller subject to sale, for the court did not create the relation of mortgagor and mortgagee by its decree, but held that it was a mortgage by virtue of the agreement of the parties at the time. of the execution of the conveyance of Fuller to Jenkins, 28 January, 1896.

The defective decree at July Term, 1902, which attempted to convey the property to Lee Fuller's wife, was evidently procured and arranged with the intent by that unauthorized and irregular proceeding to head off the title which the United States Government had obtained by the purchase of Lee Fuller's interest at the execution sale in May, 1900, for Josephine Fuller was not a party to the action in which the decree was rendered and is not shown to have paid the $30 and interest or any other consideration, if, indeed, she could have purchased the property from her husband against the superior title already acquired by the United States as purchaser at such sale.

For the above reasons the judgment ought to be reversed.

BROWN, J., concurs in dissenting opinion.