Gaston, Judge,
 

 after stating the facts as above, proceeded : — It is insisted, that the plaintiff is not entitled to the decree for which he prays. The first objection made, is that Hatton never had any estate (other than a term for years) in the lot: that the same was purchased by Ricks, and leased to Hatton for a fair rent; and that the agreement of Ricks only gave Hatton a right to purchase from Ricks, upon the conditions and terms therein stated. The Court is entirely satisfied that this objection is unfounded. Whatever may be the forms with which the transaction was invested, it is manifest that, in truth, the purchase was made by Hatton, who actually paid one-third of the purchase-money: that Ricks advanced to Hatton the sum necessary to make up the residue of the price: that the conveyance was made to Ricks as a security for this advance: that the contract of lease was a mere contrivance to obtain twelve and a half instead of six per cent, interest upon the money so advanced; and that Hatton had a clear right in equity to redeem the lot on payment df what was
 
 bona fide
 
 due. The contract with Mrs. Alston was made by Hatton in his own name, and exclusively for his own benefit. Ricks was never known in the
 
 *616
 
 transaction, until the moment when the contract was to be executed. It is admitted by Ricks, that one-third of the price paid for the lot was Hatton’s own money, and it is not pretended that Ricks acknowledged himself
 
 Hatton’s debtor
 
 therefor. No notice whatever is taken of this payment by Hatton in any of the writings. The defendant admits that Hatton applied to him for a loan of three hundred dollars to complete the purchase; says that he refused to lend; but being pressed by Hatton, he at length concluded, as
 
 an accommodation
 
 to Hatton, to buy the lot himself upon Hatton’s advancing what money he could, (the one hundred and fifty dollars,) and afterwards to let Hatton have the title upon the terms mentioned. Independently of these circumstances, the written agreement manifests that the parties regarded the purchase as Hatton’s. Why the stipulations that Hatton is to take the lot under its present incumbrances, and to get the possession as he can? In the view we take of the transaction, these are reasonable stipulations; but if the purchase were solely on Ricks’s account, and Hatton’s occupation were as Ms tenant, it is exceedingly difficult, if not impossible, to account for them. The subsequent conduct of the parties is explanatory of the transaction. Hatton continues to occupy the lot, increases its value by permanent improvements, and not a cent of rent is paid or demanded during the occupation. When it is recollected that nothing is more usual than for oppressive money lenders to avail themselves of the necessities of a needy borrower, to obtain for themselves collateral advantages over and above the interest of the money they advance, and to clog the redemption of the pledge put into their hands or power by agreement — all manner of extortion and usury would be let in, if
 
 the forms
 
 here used, were held sufficient to constitute Ricks the whole and absolute owner of the property.
 

 The act of 1812, (1
 
 Rev. Stat.)
 
 subjecting equities of redemption to execution, extends to
 
 *617
 
 those sub. redemption bycon-ofa Court of Equity, those ^ the terms'* °^emort"
 

 
 *616
 
 But it is objected, that if Hatton had a redeemable interest in this property, it was not such an interest as our act of 1812 subjects to sale at execution. The first section of that act embraces all lands and goods whereof any one may be seized or possessed in trust for the defendant in execution, and is unquestionably restrained in its
 
 *617
 
 operation, to cases of mere naked trusts solely for the defendant. Clearly the estate of Hatton was not liable to execution under this section. The second enacts that the “ equity of redemption in all lands, tenements, rents and hereditaments which are now or hereafter shall be pledged or mortgaged shall, in like manner be liable to anj’- execution or executions hereafter sued out on any judgment against the mortgagor or mortgagors.” For the defendant it is contended, that this section embraces no equity'of redemption, except such as arises upon formal mortgages, where a conveyance of lands has been made by a debtor to his creditor, with an express proviso or defeazance, that the same shall be void on payment of money at a certain day. It is worthy of observation, that the reason which has compelled the Courts to place the most rigorous construction on the section of the act respecting sales of trust estates, does not apply, in the construction of the section now under examination. A sale by execution of a trust estate entirely destroys the estate of the trustee, and transfers the land or chattel itself to the purchaser. We were bound, therefore, to hold that no sale of a trust interest was contemplated by the statute, except where the trustee held simply for the benefit of the
 
 cestui que trust,
 
 as it would be indecent to suppose that the legislature intended by a sale of the debtor’s interest, to disturb the interest of any other person. But a sale, under the act, of an equity of redemption, transfers to the purchaser simply the right of him entitled to redeem, and does not displace, or in any manner disturb the right of the mortgagee. Moreover, whatever may be our opinion of the policy of the enactment, even should we suppose that it were better that the equity of redemption should be subjected to a creditor who had issued out execution, by a bill to redeem, instead of being set up to sale under execution, we are bound to regard the policy approved by the legislature as that best for the community, and therefore to affix to their enactment such a reasonable construction as will advance that policy. Now it is obvious, that the great purpose of this enactment was to furnish an easy and expeditious remedy to creditors against debtors, who held redeemable
 
 *618
 
 interests, actually of value, but not acknowledged at law, because the whole legal estate was outstanding in another, and it is equally obvious, that if we adopt the narrow construction contended for, every debtor’, by a slight change
 
 ofform,
 
 may secure to himself such valuable interests, and place them beyond the operation of the statute. The very case before us is an apt illustration of this position. An embarrassed man obtains a loan upon a pledge of property, purchased by himself, and in order to effect that purchase; but instead of taking the legal title to himself, and giving a formal mortgage to the lender, he has the legal title made directly from the vendor to the lender, taking from the latter an instrument which manifests that such title was made but as a security for the loan, and then the judgment of his creditor cannot reach it. We are aware of the inconveniences which may result from the sale of interests as equities of redemption, where the right of redemption may not be express — may indeed be doubtful — but we feel ourselves bound to hold, that whatever a Court of Equity —the appropriate tribunal for passing upon such inquiries — holds to be an equity of redemption in lands, is by force of express legislation, liable to sale under execution.
 

 A sheriff’s deed for an equity of redemption is effectual, although it does not describe the land as under mortgage; the act of 1812 being in this respect merely directory.
 

 It is further objected, that the sheriff’s deed in this case, if the sale were valid, is insufficient, because it does not follow the directions of the act; which makes it “ the duty of the sheriff, when he sells an equity of redemption, to set forth in his deed, “ that the said lands, tenements and hereditaments were under mortgage at the time.” If we regarded this objection as well founded, we should not dismiss the bill therefor; but afford the plaintiff an opportunity to have a deed made in better form. The objection is purely formal; as unquestionably, in the present case, the levy was made upon this equity, the sale was made subject to Ricks’s legal title or mortgage, it would be the duty of the sheriff to execute a deed in approved
 
 form;
 
 and the deed, when so executed, would relate back to, and have effect from the time of sale. But we do not deem it necessary to defer the decree for this reason. It seems to us that the clause is simply directory to the sheriff It is advisable, for
 
 many
 
 reasons, that this dii’ection should be
 
 *619
 
 observed ; and sheriffs ought to take care not to disregard it. But we do not feel ourselves justified in declaring, that the deed does not convey what it purports to convey, and what was actually purchased — the interest of Hatton in the lot.
 

 4n execu-chaseraf ““redemp lion, need "hemorga-got-a party f°rhre.bl11 demption.
 

 Finally it is objected, that the plaintiff is not entitled to a decree, until he shall make the personal and real representatives of Hatton parties to this action. The question, what parties are necessary or proper to be made, is felt by all conversant with the proceedings of Courts of Equity, to be sometimes the most perplexing which can be presented. The general rule is, that all persons having an interest in the object of the suit, ought to be made parties, and the general rule is thus established for two purposes; the one, that no man’s right shall be decided without affording him an opportunity to be heard; and the other, that when a decision is made, it shall provide for the rights of all, whose interests are immediately connected with the decision. But even this general rule is subject to so many exceptions, and is in some cases so difficult of application, that a mere recurrence to it, will not readily settle the question of proper parties. Hatton’s representatives are not wanted here, because of any decision asked against them. If they ought to be here, it must be that provision may be made to prevent the defendant from being hereafter harrassed by them. The
 
 possibility,
 
 that they may institute a suit against Ricks, does not in the opinion of the Court, furnish a sufficient reason for requiring that they should be parties to this bill. The elementary books and the adjudged cases, lay it down very clearly, that a bankrupt is not a necessary party to a bill brought by his assignees, yet w'e suppose it cannot be controverted, that if a decree should be rendered upon such a bill, it would be competent for the alleged bankrupt, to bring his own bill or action, denying the bankruptcy, and the validity of the assignment. So it is laid down, that, where a mortgagor or mortgagee, makes an assignment of all his interest, the assignee may institute his bill, without making the assignor a party. But certainly, the assignor will not be precluded by the decree rendered, from asserting his right, after-
 
 *620
 
 wards, denying the fact of or the operation of the assignment. The reason given in all these cases is, that upon the matters charged in the bill, the assignee is seen to have no interest; and therefore, the bill cannot be demurred to, for want of parties. If the assignment charged, be admitted by the answer, then upon that admission, the assignor has no interest. If the assignment be denied, the plaintiff is bound to prove it upon the hearing, and it being established, the Court judicially finds the fact, that the assignor has no interest. If a defendant, when a claim is advanced against him, apprehends injury, because of a conflicting claim asserted by another, he can take the proper measures to make the parties asserting such claims, interplead with each other, so that the Court may adjudge to which of them the disputed right belongs; and he may be completely indemnified. But it is enough for any plaintiff asking relief, to bring before the Court
 
 all
 
 who, according to his allegations, supposing them true, have any interest to be affected by the relief asked. The Court does not see any substantial distinction in this respect, between an assignment alleged to have been made by act of the party, and one made by act of law, provided that the assignment in each case be
 
 complete.
 
 In either case, where the assignment passes the entire interest, and the plaintiff simply claims to have that interest, against one denying it; the assignor seems not to be a necessary party. In both, where the assignment is partial, or leaves an interest either legal or equitable in the assignor, the latter is a necessary party. The present case according to the pleadings, is one in which there would have been less ground for requiring the assignor to be a party, than usual. The dispute here, is not so much about the facts, as upon the law of the Court arising upon the facts; and it must be presumed, that whatever is now declared to be the law of the Court will be held so, whoever may hereafter attempt to impeach it.
 

 It is the opinion of the Court, that the plaintiff is entitled to a decree, that, upon his paying to the defendant, on or before the 15th of June next, the sum of three hundred dollars with interest, from the 20th of May 1833, Ricks shall make a conveyance, to be approved by the clerk of
 
 *621
 
 this Court, of the lot in question, with covenants against his own acts and incumbrances ; shall surrender up to this Court to be cancelled, the single bill of Hatton herein before mentioned; and as the right of the plaintiff to redeem, has been unconscientiously resisted, the plaintiff is entitled to recover costs.
 

 Pm Curiam. Decree accordingly.