Pearson, J.
 

 Every count in a declaration is a distinct and separate cause of action. In ejectment, the several counts are usually upon different links of the same chain of title. But sometimes the counts involve different titles. This arises from the fact, that although the nominal plaintiff is the same, yet the lessors, or real plaintiffs, may claim under distinct and unconnected titles. When this occurs the case is apt to be
 
 *210
 
 complicated, and care must be taken to prevent confusion by considering tbe facts necessary to support tbe counts respectively, separate and apart from those applicable to tbe other counts.
 

 1st. We will consider tbe count in which Benjamin C. "Williams is tbe lessor or real plaintiff. It is admitted that tbe title was once in him. To show that tbe title has passed out of him, tbe defendant relies upon tbe deed executed by Burroughs to Tyson, in 1841, in consequence of certain proceedings in Equity in respect to tbe sale of tbe land. It is conceded that this deed was not operative except as color of title ; but tbe defendant relies on it as color of title, and proves an adverse possession under it by Tyson through bis tenant, "Watson, for more than seven years. This, in tbe absence of tbe other proof, would ripen that title and make it a perfect one. Tbe plaintiff then proved that Benjamin C. "Williams did not arrive at full age until September, 1842, and commenced an action of ejectment in June, 1845, (less than three years,) be being tbe sole lessor, which action was prosecuted until Spring Term, 1853, when there was a nonsuit; and this action, in which tbe declaration has two counts, one on tbe demise of Benjamin C. "Williams, and tbe other on tbe demise of John D. "Williams and others, was commenced in July, 1853, (less than a year). Tbe question is, does this save tbe right of entry, or title of Benjamin C. Williams, under tbe proviso of tbe Rev. Stat., cb. 65, sec. 1 ?
 

 Tbe defendant insists that it does not; for, to have that effect, tbe new action must be upon tbe
 
 same title
 
 and between tbe
 
 same parties.
 
 In this count tbe title is tbe same, and tbe real plaintiff, or lessor, is tbe same, but tbe defendants are different. Tbe first action was against Watson ; this action is against Council. We are of opinion that, by a proper construction of tbe proviso, tbe second action must have one count upon tbe same title, and have tbe same lessor. This satisfies tbe words
 
 new action,
 
 which have not precisely tbe meaning of another action, generally, but mean another action upon tbe same cause of action by tbe same real plaintiff;
 
 *211
 
 but we do not think that tbe defendant in tbe new action must be tbe same person as tbe defendant in the former action ; for, if so, tbe plaintiff might be deprived of tbe benefit of this saving, without any fault or laches on bis part; tbe defendant in tbe first action' would have nothing to do but give place to another tenant of tbe same landlord, orbe might convey to a third person, or leave tbe premises vacant and let a third person enter, and thus force tbe plaintiff to bring tbe new action against a different defendant; and it would be absurd to suppose that • tbe defendant, in the second action might insist upon tbe possession of the defendant in the former action, as a bar to tbe plaintiff’s right of entry, although the latter, had he continued in possession, could not, by force of the proviso, have availed himself of his own possession. Nor do we think that the circumstance of the declaration in the new action, having a second count on tbe demise of other persons, makes any difference; for each count is distinct, and stands upon its own merits, and the one can neither be aided nor prejudiced by the other. “The object of the proviso is tp preserve the right of any person having it at the time of instituting an action on his title; and it ought not to harm the true owner that the declaration sets forth separate demises of others, provided the declaration in both actions has a count on the demise of the true owner.”
 
 Long
 
 v. Orrell, 13 Ire. 123. There a construction is put upon the proviso, and it is held to apply to a case where the declaration in the first action had two counts, and that in the second but one. Orn-ease is the reverse of it, but the principle is the same, and the rule works both ways.
 

 Failing upon this ground, the defendant assumed the position, that the deed from Benjamin 0. ’Williams to John D. Williams and others, dated 22nd of February, 1853, passed the title out of him, and, consequently, the action could not be maintained upon the count in his name.
 

 To this the plaintiff replies, that, as Benjamin 0. Williams, at the date of his deed, was out of possession, and had but a mere
 
 right,
 
 the deed was inoperative.
 

 
 *212
 
 To this the defendant rejoins, that although Benjamin C. Williams could not transfer his right to a
 
 stranger,
 
 yet, as John D. Williams and others, the lessors in the second count, were in possession at the time, the deed from Benjamin C. Williams to them took effect as a
 
 release
 
 of his right, and passed it out of him. To show that John I). Williams and others were in possession, the defendant relied on the fact that the interest of Watson, who was in possession under Tyson, had been levied on and sold at execution sale by the sheriff, and bought by John D. Williams and the others, to whom the sheriff executed a deed on the 25th of January, 1853, and also a deed of the same date by Watson to John D. Williams and the others.
 

 It is clear that although one whose estate is divested and turned into a mere right of action, cannot transfer his right to a stranger, for it would encourage litigation, yet he may release his right to the party in possession, for that ends litigation. So the only question is, were JohnD. Williams and the others in possession so as to be capable of taking a release
 
 %
 
 We are of opinion that, whatever may be the effect of the deeds of the sheriff and Watson in other respects, (which will be considered in the examination of the second count,) they did have the effect of putting John D. Williams and the others in possession, by, and through, Watson, who was in the actual possession, so as to place them in a condition to accept the release of Benjamin C. Williams, as to whom they were then in an adversary position. Watson being in possession, the sheriff’s deed gave them a right to it, and they could have recovered in ejectment against him in spite of Tyson and any one else. So the deed from Watson amounted to an at-tornment which made his possession
 
 theirs.
 
 This, it is true, was wrongful as to Tyson, and he might have estopped them from setting up a possession acquired by collusion with his tenant, but for the subsequent entry of the defendant claiming under him. Still they had the possession
 
 defacto
 
 as to Benjamin C. Williams and every one else who was not in a condition to
 
 shut their mouths
 
 by an estoppel. The effect of
 
 *213
 
 tbe release was to pass the right of Benjamin C. "Williams to them. So, we concur with his Honor that B. C. Williams was not entitled to recover on the count in his own name.
 

 2nd. Upon the count in which John D. Williams and others are the lessors, or real plaintiffs, the facts are, that, in 1841, Tyson, having taken a deed from Burroughs, contracted with Watson for the land at the price of $3,500. “The payment was to be made from the proceeds of the estate of Watson’s wife in the hands of J. B. Cox, her trustee, and he was to make title to Cox for Mrs. Watson'when the purchase-money was paid. Watson entered, at that time, into possession of the lánd as the tenant of Tyson,’’.and continued in possession until March, 1853, and never surrendered the possession to Tyson. The purchase-money was paid in 1846, principally by J. B. Cox, tiie trustee, and partly by one Moses Cox, a brother of Mrs. Watson. In February, 1853, Tyson executed a deed to J. B. Cox, as trustee for Mrs. Watson, and on the same day Cox executed a deed to the defendant, who entered upon the land, and this action was commenced. The plaintiff also offered in evidence a transcript of a record in the Supreme Court, of a cause in Equity, wherein Watson is plaintiff, and Benjamin C. Williams and Tyson are defendants, in which there was a decree, June "Term, 1852, (8 Ire. Eq. 232,) declaring that Benjamin C. Williams held the legal estate in trust for Tyson, and that Tyson having sold to Watson and received the purchase-money, Watson was entitled, through Tyson, to have the legal estate conveyed to him by Benjamin 0. Williams. This evidence arid the points made by the plaintiff in the Court below, in respect to it, may be put out of the ease, for neither the,defendant nor Cox, nor Mrs. Watson, are parties ; of course they are not concluded, or in anywise affected by a proceeding which was “
 
 res inter alios acta?
 

 The lessors rest their case upon three titles:
 

 1st. The deed from Watson to them.
 

 Watson, besides the possession, had, at most, nothing but a trust estate. Supposing his deed passed that, it would avail
 
 *214
 
 the lessors nothing, because the legal title, upon which this trust depended, was left in Tyson, and, in this action, it is necessary for the lessors to establish a legal title in themselves; and the only effect which the deed had upon the legal title, was to put the possession in the lessors, so as to make them capable of taking a release of the right of Benjamin C. Williams, as has been before shown.
 

 2nd. The sheriff’s deed.
 

 Erom the general manner in which the case was put to the jury, the plaintiff has a right to that view of the evidence which is most favorable to him. Accordingly, it is insisted, that although the money paid- for the land was his wife’s money, yet,
 
 Jure mariti,
 
 it became the money of Watson, there being no proof of a separate estate in the wife. So, we have this ¡joint: — A husband buys land which is paid for with his money, but he directs the title to be made to a third person in trust for the wife, has the husband such a trust estate as can be sold under execution ? It is clear he has no trust at all, for the trust which would be presumed in his favor, from the fact of the purchase-money being his, is rebutted by the express trust which he declares in favor of his wife.
 

 It is then said, as the husband was in debt, this declaration of trust for his wife is fraudulent and void against creditors. Admit the fraud, it is evident that the statute of 13th Eliz. has no application, and the only mode in which creditors can reach the fund is in Equity.
 

 It is said in the third place, if the wife have the trust estate, it not being secured to her separate use, the husband is tenant by the curtesy initiate, if there be issue, and at all events he is entitled to an estate during coverture; and as this estate was acquired before the act of 1848, the purchase-money having been paid in 1846, whereby Tyson became seized in trust for the wife, this interest of the husband was liable to execution sale under the act of 1812. So, we have this point: If a trust estate be divided by giving A a particular estate, with a remainder or reversion in B, does the case come within the op
 
 *215
 
 eration of tbe act of 1812, so that tb'e trust of A may be sold under execution ?
 

 It is settled by many cases, that tbe act of 1812 only applies to a pure, unmixed trust, so that tbe purchaser of the trust can acquire the
 
 enbvre legal estate,
 
 -without prejudice to the rights of third persons; for, the act does not provide that the purchaser of the trust shall have the legal estate “ in the same manner, plight and condition ” that he has the trust, as is provided in the 27 th ITenry 8th, in regard to uses, whereby a part of the legal estate may be taken “ to feed ” one use, leaving a part of the legal estate,
 
 ox-scintilla jwis,
 
 in the trustee, to supply other uses ; but it enacts in broad terms that “ the goods and chattels, lands, &c., by force of the execution, shall beheld and
 
 enjoyed, freed and discharged from all incum-brances
 
 of the person so seized or possessed in trust for the person against whom such ^execution shall be sued.” In the construction of this statute, the principle adopted is, that it does not apply to any trust except such as entitle the
 
 cestm que trust
 
 to call for the entire legal estate, free from any in-cumbrance or charge whatever on the part of the trustee, by reason of his duty to others. Our question falls within the principle; indeed, it is the very instance put by Rm?jriN, 0. J., for the sake of illustrating it in1
 
 Battle
 
 v. Petway, 5 Ire. 576, which is one of the many cases where the principle is discussed and established. This' principle confines the operation of the statute to very narrow limits, leaving creditors, in most cases, to seek relief in Equity, where the several trusts can be ascertained and properly protected.
 

 3rd. The deed of Benjamin 0. "Williams.
 

 We have seen that the effect of this deed was to operate as a release, passing the right of Benjamin 0. Williams to the real plaintiffs in the count, and that the right was “ tolled ” by the adverse possession of Tyson, unless it came within the saving of the proviso in favor of infants. The question is, can the plaintiffs avail themselves of the proviso so as to protect the right of entry which has passed to them ? The saving is a
 
 personal
 
 protection; this is evident from the words used,
 
 *216
 
 and from tbe object which the law-makers had in view. The intention was to protect those persons whose estates had been divested, and their right of entry tolled, by an adverse possession during their minority, provided they brought suit within three years after coming of age; and in case of a miscarriage in the first action, provided
 
 “
 
 the party plaintiff, his heirs or executors, as the case shall require, commence a
 
 new
 
 action within one year.” We have seen above that, to make it a new action, the real plaintiff must be the same, and the cause of action the same. The count, in the name of these plaintiffs, does not come up to the idea of a
 
 new
 
 action in any one particular; they were not parties to the first action; the cause of action is not the same, (for the demise in the first action might be laid at any time after the death of the father of Benjamin C. Williams, to wit, in 1828, whereas the demise in this count is laid on the
 
 1st of Jv/ne,
 
 1853, and could not have been laid further back than the date of the deed of Benjamin C. Williams); and the defendant is not the same. The principle of
 
 remitter
 
 has no application. That applies where pne, having a wrongful possession, has the title thrown on him by act of law — as by a descent; he is then remitted to-las “ more ancient and better title,” but not where he acquires the title by his own act. Coke Lit. Here the lessors of the plaintiff acquired both the possession and the “ more ancient title ” by their own acts. It follows that they cannot sustain it in this count, on the title derived from Benjamin C. Williams. There is no error.
 

 Pee Cueiam. The judgment is affirmed.