CLARK, C. J., dissenting; BROWN, J., concurring in the dissenting opinion.
(150) This is an action to recover land, both parties claiming title under Lee Fuller.
On 28 January, 1896, Lee Fuller executed a deed to H. T. Jenkins purporting to convey said land to him in fee.
In the spring of 1898 he commenced an action, to which his wife, S. J. Fuller, was not a party, alleging that the deed of 28 January, was intended as a security for a debt, and that certain clauses had been omitted by mistake, and at July Term, 1902, of Swain Superior Court the following judgment was rendered in said action:
LEE FULLER v. HENRY T. JENKINS.
This cause coming on to be heard on motion of the plaintiff for judgment in accordance with the judgment and opinion of the Supreme Court in this action:
It is ordered, adjudged, and decreed by the court that it appearing and having been made to appear that the plaintiff paid into the office of the clerk of the Superior Court of Swain County the sum of $9.95 the amount which was required to be paid by the opinion of the *Page 197 
Supreme Court; that the defendant H. T. Jenkins shall execute and deliver to S. H. Fuller, her heirs, a deed conveying the title to the land, which is described as follows:
"Beginning on a stone in the ford of the branch, it being the Jones corner, and runs south 49 1/2 west 22 poles to a stake with pointers; thence south 32 east 12 poles to a small black oak; thence south 32 east with Charles Jenkins' line 26 poles to a stake on the north side of a large gully; thence north 83 east . . . poles to a stake in the branch; thence north 15 west 23 poles to a stake in the branch; thence down the branch as it meanders to the beginning, containing 11 1/2 acres, situated in Swain County, Charleston Township."
It is further ordered, adjudged, and decreed by the court that the title to the said tract of land be and the same is hereby divested out of the defendant, H. T. Jenkins, and that the title to the same is hereby vested by this decree in said S. H. Fuller and her heirs. It is further ordered and adjudged by the court that the plaintiff have and recover of the defendant H. T. Jenkins, and his surety of his defense bond, Charles Jenkins, the cost incurred in this action, to be taxed by the clerk.
(Signed) M. H. JUSTICE.
On 15 January, 1903, Lee Fuller and wife, S. J. Fuller, executed a deed to the plaintiff purporting to convey said land in fee.
The judge finds as a fact that Lee Fuller directed his counsel who drew the decree at July Term, 1902, to convey this land to Fuller's wife, S. J. Fuller, but by mistake he named S. H. Fuller in the (151) decree. The judge also finds that the person intended was Josephine Fuller, the wife of Lee Fuller, who had by name of Josephine Fuller joined in the conveyance to Henry T. Jenkins on 28 January, 1896, and that the intention was to convey the land to her by this decree, and that S. J. Fuller and Josephine Fuller are one and the same person and that she is the person who by mistake was named as S. H. Fuller in said decree, and that she has never been known as S. H. Fuller, but by mistake in drawing the decree she was designated S. H. Fuller instead of S. J. Fuller.
In the meantime judgment had been obtained 9 January, 1900, in the Federal Court against Lee Fuller on a distiller's bond, which judgment was docketed in Swain, 21 February, 1900. This tract of land was sold under execution on said judgment on 7 May, 1900, at which sale the United States became the last and highest bidder and the deed was made accordingly, 23 May, 1900, and duly registered. On 11 March, 1900, under proceedings in accordance with law, the *Page 198 
Commissioner of Internal Revenue conveyed said tract to the defendant M. F. Brendle.
On these facts judgment was rendered in favor of the plaintiff, and the defendant excepted and appealed.
It was contended before us that the decree in the action of Lee Fullerv. Jenkins did not carry the title to S. J. Fuller, because of the mistake in the second initial, and that it would first be necessary to bring an action to correct the decree. This is unnecessary under our system of procedure, combining legal and equitable remedies. As it is found as a fact that S. J. Fuller was intended when by mistake S. H. Fuller was named, and that S. J. Fuller, the party named, is Josephine Fuller, the wife of Lee Fuller, who joined in the conveyance to Jenkins in 1896, and who, with her husband, made the subsequent deed to the plaintiff in January, 1903, this is sufficient if the grantee (by whatever name) obtained the title under such decree. The name used is merely a designation to identify the party, and when that identity is established a variation in name, and especially a difference in the middle letter, as S. H. Fuller instead of S. J. Fuller, is immaterial.
In Words and Phrases (Second Series), under the title "Name," it is said: "The common law recognizes but one Christian name, and a middle initial may be dropped or changed at pleasure." It is further said: "In law the name of a person consists of one given name and one surname."
(152) The plaintiff in her amended complaint sets out the decree of 1902 as a part of her title, and alleges that it had the effect of passing to the wife of Lee Fuller a perfect equitable title, if not a legal title, and to these allegations the defendant makes no answer, nor does he allege that the direction in the decree to make the title to the wife was fraudulent.
There is also no evidence of an adverse possession by the defendant and those under whom he claims prior to 1909, about five years before suit brought; so that there is no evidence of seven years adverse possession under color.
There are, therefore, two questions, which are determinative of the appeal:
(1) Did the wife of Lee Fuller acquire a legal or equitable title to the land in controversy under the decree of 1902? *Page 199 
(2) Did the sale by the marshal of the United States, under which the defendant claims, pass a legal or equitable title to the purchaser?
The plaintiff may maintain her action against the defendant upon an equitable title (Watkins v. Mfg. Co., 131 N.C. 537, and cases cited), and if the decree vested such a title in her grantor, and it was not divested by the sale by the marshal, which has the legal effect of a sale under execution, she is entitled to recover; and, on the other hand, if the grantor of the plaintiff acquired no title, legal or equitable, under the decree, or if there was such title and it was divested by the sale, she cannot recover.
It is doubtful if the decree had the effect of vesting the legal title in the wife of Lee Fuller under the statute (Revisal, secs. 566-7), because of the failure to declare that it "shall be regarded as a deed of conveyance" (Morris v. White, 96 N.C. 93), although the authority cited appears to give a narrow construction to the statute, and to attach more importance to the section declaring the effect of the decree than to the one prescribing its form; but however this may be, it appears from the record in the action of Fuller v. Jenkins that Jenkins, by force of the decree, held the legal title in trust to secure an amount due him, and then in trust for Lee Fuller, and that the amount due was paid, and this left the bare legal title in Jenkins and the beneficial interest and equitable estate in Lee Fuller, which he had the right to direct should be vested in his wife, although she was not a party. Testerman v. Poe, 19 N.C. 103;Campbell v. Baker, 51 N.C. 256; Ward v. Lowndes, 96 N.C. 381.
The last case cited was that of a purchase at a judicial sale by the husband, and a direction by him to make title to his wife, who was not a party, and the Court says: "The purchaser of the land, Lowndes, directed the deed for it to be made to his wife, and the administrator did so make it. This is made a ground of objection by the (153) plaintiffs. It seems to us to be wholly without merit. The purchase money was paid as required by the order of the court, and the administrator was directed to make title to the purchaser. Why might he not make it to such person as the purchaser directed — to his wife? His power to convey to the purchaser was complete; the purchaser was entitled to have the deed made to him. Why not to have it made to such person as he might indicate? We can see no legal reason why he was not." The fact that the deed was not executed only affects the legal and not the equitable title.
We are, therefore, of opinion that the decree vested the equitable title in the wife of Lee Fuller; but if this was not so, the equitable title was in Lee Fuller and passed to the plaintiff under the deed of Lee Fuller and wife. *Page 200 
Did the purchaser at the sale by the marshal acquire a legal or equitable title? and this depends on whether Lee Fuller had at that time, two years before the decree in Fuller v. Jenkins, an estate in the land subject to sale under execution, or a mere right.
The distinction between a right to have an equity established and enforced, which is not the subject of sale under execution, and an equitable estate, which may be sold, if "simple and unmixed," that is, one which entitles the owner to call for the legal title, is well established.Thompson v. Thompson, 46 N.C. 38; Bond v. Hilton, 51 N.C. 181; Nelsonv. Hughes, 55 N.C. 36; Taylor v. Dawson, 56 N.C. 91; Hinsdale v.Thornton, 75 N.C. 383; Henley v. Wilson, 77 N.C. 218; Cedar Works v.Lumber Co., 168 N.C. 396.
The Court says in the first of these cases: "The ground of distinction consists in the difference between a trust created by the act of the parties, where he who has the legal estate consents to hold it in trust for the other, and there is not adverse possession or conflict of claims, and a trust created by the act of a court of equity, where there is a conflict of claims, and the party having the legal estate holds adversely and does not become a trustee until he is converted into one by a decree founded on fraud, or the like. In the former the cestui que trust has an estate; in the latter there is a mere right"; in the second, "In equity, where the trust is by agreement of the parties, we say the cestui que trust
has the estate; but where a decree is necessary, in order to convert one into a trustee against his consent, the party has a mere right";
in the third, "`A right' to property is not subject to execution at common law; the debtor must have an `estate'; consequently, `a right' to have one declared a trustee is not subject to execution under the statute; the debtor must have a subsisting trust — an `estate' — as distinguished from a mere `right in equity'"; in the fourth, "All trusts are (154) either by agreement of the parties, as where there is a declaration to that effect, or where a trust is implied or presumed, as a resulting trust, or where one buys land and has the title made to a third person; or against the assent of the party who has the legal title. . . . In the former there is no adverse holding or conflict of claim between the trustee and cestui que trust; the one holds by agreement the legal title for the other, who has the estate in equity. In the latter there is an adverse holding and conflict of claim; the one holds the legal title for himself or some third person, who has a privity, or is in collusion with him (as in our case), and the other has but a right in equity or chose in action"; in the fifth, "Where one has only a right in equity to convert the holder of the legal estate into a trustee, and call for a conveyance, the idea that this is a trust estate, subject to sale under fi. fa., is new to us. True, his right to call for the *Page 201 
legal estate is not subject to any further consideration than proof of the facts alleged in support of his right, but there is no trust estate until the decree declares the facts and the court declares its opinion to be that the one party shall be converted into a trustee for the other. It follows that the party has no estate subject to execution sale until the decree has vested an equitable estate in him," and the other cases cited are to the same effect.
The principle clearly deducible from these authorities is that if it appears on the face of the writings that the legal title is in one, but that it is held in whole or in part for the benefit of or in trust for another, the latter has an estate, although he may have to go into a court of equity to enforce his claim; but if there is no declaration of the trust, and the holder of the legal title denies the right, and the one claiming a beneficial interest is compelled to invoke the aid of a court of equity to establish the facts upon which his right depends, he has no estate until the decree is entered in his favor.
We repeat here the language of Pearson, C. J., in Bond v. Hilton, that "When a decree is necessary in order to convert one into a trustee against his consent, the party has a mere right," and in Hinsdale v. Thornton, "There is no trust estate until the decree declares the facts and the court declares the opinion to be that the one party shall be converted into a trustee for the other. It follows that the party has no estate subject to execution sale until the decree has vested an equitable estate in him."
At the time of the sale by the marshal the title was in Jenkins, who held under a deed, in which there was no declaration of a trust or other evidence of an equity, and who denied that he held the title as a security; a decree was necessary to establish the facts upon which the right of Lee Fuller rested; the sale was two years before the entry of the decree, and it follows that Fuller had at that time a mere (155) right, which was not subject to sale, not an estate, and that the purchaser acquired no title; and this is in line with the policy of our law which discourages the sale of uncertain and speculative interests.
The title was in Jenkins under a deed absolute, and there was nothing on the record to suggest that Fuller had either right, title, interest, or equity in the land. An action was pending in which Fuller alleged that the clause of defeasance had been omitted from the deed to Jenkins by mistake and that it was intended as a security for debt, and this was denied by Jenkins. It was under these conditions the sale was made, when Fuller had nothing for sale except a lawsuit, and it is not surprising that the purchase price was $1, which is less than 9 cents per acre for the land in controversy. *Page 202 
We, therefore, hold that the plaintiff has at least an equitable estate, and that as the defendant acquired no title under the sale by the marshal, she is entitled to recover.
There is much authority in support of the position that if Fuller had an equitable estate it was not one subject to sale under execution, because not a simple equity (Gillis v. McKoy, 15 N.C. 174; McGee v. Hussey,27 N.C. 258; Battle v. Petway, 27 N.C. 578; Williams v. Council,49 N.C. 214; Tally v. Reid, 72 N.C. 337; Love v. Smathers,82 N.C. 373; Mayo v. Staton, 137 N.C. 685), and there is also authority that the act of 1812 includes all equities of redemption (Thorpe v. Ricks, 21 N.C. 618; Davis v. Evans, 27 N.C. 534; Doak v. Bank,28 N.C. 330; Frost v. Reynolds, 39 N.C. 498), although these cases are based on Thorpe v. Ricks in which the right to redeem was in writing; but it is not necessary to discuss this question, as there was no estate in Fuller at the time of the sale.
Affirmed.