392 S.W.2d 781 (1965)
Appeal of Marion Faye EVETTS et vir.
No. 14411.
Court of Civil Appeals of Texas, San Antonio.
June 16, 1965.
Rehearing Denied July 21, 1965.
*782 Butler, Schraub, Schafer & Gandy, Robstown, for appellant.
Lewright, Dyer & Redford, Corpus Christi, for appellee.
CADENA, Justice.
Marion Faye Evetts, joined by her husband, J. B. Evetts, Jr., appeals from the action of the trial court in denying her application to change her surname to Herron.
Until May 29, 1961, appellant was the wife of John Charles Herron. On that date, John Charles Herron died as the result of injuries received by him in Nueces County, Texas. Appellant instituted suit in Nueces County under our wrongful death statute (Art. 4675, Vernon's Ann. Civ.Stats.), individually and as next friend of three minor children, against Southwestern Oil & Refining Company to recover for the death of John Charles Herron. That suit is still pending.
On June 22, 1963, appellant married J. B. Evetts, Jr., with whom she and her three children now reside in Alice, Jim Wells County. Her three children still bear the surname "Herron."
Appellant, joined by her husband, filed her application for change of name in Jim Wells County, the county of her residence, as required by Art. 5928, Vernon's Ann.Civ.Stats. In the application it is alleged that, although evidence of a subsequent marriage is inadmissible in a suit by a widow under the wrongful death statute, the attorneys for the defendant in the Nueces County litigation have stated their intention to convey to the jury in that suit the knowledge that she has remarried, by asking appellant to state her present legal name. The purpose of the application for change of name is to permit appellant to continue prosecution of the wrongful death action under the name Marion Faye Herron, so as to protect more fully her right not to have the irrelevant fact of her remarriage brought to the attention of the jury, directly or indirectly.[1]
At the request of the trial judge, counsel for appellant notified counsel for Southwestern Oil & Refining Company, defendant in the Nueces County wrongful death suit, of the application. Counsel for Southwestern participated in the hearing of appellant's application, but no brief has been filed on behalf of Southwestern in this Court.
At the conclusion of the hearing, the trial judge said, "Gentlemen, I don't want to be in the position to affect a lawsuit in some other court. I am going to deny the application for change of name."
At the request of appellant, the trial judge filed findings of fact and conclusions of law. The trial judge found that appellant's husband, who has no interest in the Nueces County litigation, has consented to the change of appellant's surname. He further found that appellant is known as Marion Faye Evetts, that she and her minor children plan to continue to live in the *783 City of Alice, and that if the application for change of name were granted, appellant would continue to live with J. B. Evetts, Jr., as his wife, with her surname being Herron and her husband's surname being Evetts. The trial judge concluded that it would not be to the best interest of appellant to grant her application for change of name, and that the change of name applied for is unnecessary to protect any of the legal rights of appellant.
In early England the surname was relatively unimportant, the given name being considered the more important of the two. Thus, in Smith v. United States Casualty Co., 197 N.Y. 420, 90 N.E. 947, 948, 26 L.R.A.,N.S., 1167, Judge Vann cites the case of a man with eight sons, each with a different surname and none with the surname of the father. After noting that the common law was not too precise in the case of surnames (a grant to John, son of William, was good), he states "for the Christian name, this ought to be perfect."
The unimportance of the surname is further reflected in the common law rule that a man may lawfully change his surname at will, "and this without the intervention of either the sovereign, the courts, or Parliament." 21 Am. and Eng. Encyc. of Law (2d ed.) 311. However, the Christian name could be changed only upon confirmation (with the consent of the bishop and for good cause shown) or by Act of Parliament. Note (1950) 24 Tul.L. Rev. 496, 497.
Even today, in England, there is no statute which regulates the right of a person, other than an alien, to change his surname and to adopt any name by which he chooses thereafter to be known. Frequently, a man who desires to change his name does so by means of a royal license, or by Act of Parliament, or by a deed poll duly enrolled in court and advertised. But such formalities are unnecessary and are resorted to merely for the purpose of giving notoriety to the change of name and preserving evidence of it. 16 Halisbury's Laws of England (2d ed., 1950), 639. But the modern Englishman who wishes to change his Christian name must still do so at confirmation or by Act of Parliament. Id.
The common law of England was transferred to this country, and its doctrines are said to apply when not abrogated by statute. See Art. 1, Vernon's Ann.Civ. Stats. The common law rules with respect to change of name seem to be followed generally in the United States, although, for name-changing purposes, we make no distinction between Christian names and surnames. In re Leibowitz, 49 F.Supp. 953 (D.C., Ill.); Smith v. United States Casualty Co., supra; Evans v. Brendle, 173 N.C. 149, 91 S.E. 723; In re Useldinger, 35 Cal.App.2d 723, 96 P.2d 958; Dwight, Proper Names, 20 Yale L.J. 387 (1911).
It appears that throughout our history inhabitants of this country have freely exercised their common-law right to change their names. There seem to have been three principal reasons for changing names: (1) the transformation of old names due to frontier illiteracy or local habits of pronunciation; (2) the adoption of surnames, generally English, by Indians and, after the Civil War, by newly-freed slaves; and (3) the adoption of English names, or the anglicization of foreign names, by immigrants and the descendants of immigrants. 15 Encyc.Britannica, Names, p. 1159.
Many states, including Texas, have adopted statutes prescribing a procedure for change of name. 30 Am.Jr., Name (1941), p. 610, § 28. But it is generally held that these statutes do not abrogate the common law rule which allows a person to change his name without resort to legal procedure. They merely provide a method for recording the change. Clinton v. Morrow, 220 Ark. 377, 247 S.W.2d 1015; Don v. Don, 142 Conn. 309, 114 A.2d 203; *784 Degerberg v. McCormick, 184 A.2d 468 (Del.Ch.); Reinken v. Reinken, 351 Ill. 409, 184 N.E. 639; Petition of Buyarsky, 322 Mass. 335, 77 N.E.2d 216; Note, 16 N.C.L.Rev. 187, 189-190; 65 C.J.S., Names, § 11, p. 22.
We have found no case involving facts similar to those now before us. The only case with which we are familiar in which a married woman has attempted to change her name, with or without her husband's consent, is Converse v. Converse, 9 S.C. Rich.Eq. 535. There the South Carolina Court said that under a statute which allowed a court in its discretion to change the name of any person on application, the court had the power to change the wife's name against the wishes of her husband, but that the wife's application would be denied where it would prevent a reconciliation between the parties.
A person's right to change his name by court order is not absolute. Thus, it is generally held that an application for a change of name may properly be denied where the change is sought for a fraudulent purpose, or where the change of name will result in the invasion of the rights of others. Petition of Falcucci, 355 Pa. 588, 50 A.2d 200. And even in the absence of a showing of fraud or the invasion of rights of another, the court may be justified in denying an application for a change of name. In re Useldinger, 35 Cal.App.2d 723, 96 P.2d 958. That is, under statutes prescribing procedures for change of name, an order changing the name of an applicant is a matter of judicial discretion, and not of right. Ex parte Taylor, Tex.Civ. App., 322 S.W.2d 309, no wr. hist.; Plass v. Leithold, Tex.Civ.App., 381 S.W.2d 580, no wr. hist.; 38 Am.Jur., Name, p. 610, § 29.
The Texas statute authorizes a statutory change of name if, in the opinion of the judge, "it is for the interest or benefit of the applicant to so change his name." Art. 5928, Vernon's Ann.Civ.Stats. The evidence introduced by appellant at the hearing tends to show that some benefit might result to appellant, from the view-point of the prosecution of the wrongful death action, if her surname were changed to that of her deceased former husband. However, we cannot say, after examining the record, that the trial court abused its discretion in denying the application for change of name. The evidence showed that appellant and her present husband, Mr. Evetts, would continue to live together as husband and wife if the application were granted, creating a situation where Mrs. "Herron" would, to all outward appearances, be cohabiting with Mr. Evetts. The difficulties which would result from a change of appellant's surname are spotlighted by the admission of her counsel during oral argument, in response to a question from the bench, that at the conclusion of the Nueces County litigation appellant intends to file an application for a change of her surname from "Herron" back to her present surname, "Evetts."
At the hearing below, appellant's husband was questioned concerning his method of dealing with day-to-day problems which might result from a change of his wife's surname. His answers were hesitant and, sometimes, evasive. For example, he said that he would encounter no difficulty in introducing appellant to others as his wife, because he would merely introduce her by her Christian name. He also said that there would be no problem with reference to articles delivered to their home, because arrangements could be made for the children to sign for such articles. From the fact that appellant would be introduced by her husband as "my wife, Marion," rather than as "my wife, Mrs. Herron," leaving the impression that she was Marion Evetts, and from the other testimony in the record, the trial court could well have concluded that appellant had no intention of actually assuming, for the purposes of identification, the surname "Herron."
*785 We do not wish to be understood as holding that the trial court would have erred in granting the application. We merely hold that, under the circumstances of this case, the trial judge did not abuse his discretion in denying the application. In the absence of a showing of abuse of discretion, the judgment below must be affirmed.
NOTES
[1] Appellant in this case is not blazing a new trial in attempting to change her surname so that the fact of her remarriage will not be brought to light in litigation where she seeks to recover for the death of her former husband. See Kronzer, Advantages to be Gained by Trial Motions for Plaintiff, 6 So.Tex.L.J. 179, 185 (1962). At the hearing below, appellant introduced in evidence a certified copy of an order of a district court of Brazoria County, Texas, changing the surname of a remarried widow so that she could prosecute a wrongful death action using the surname of her former husband.