DILLON, Judge.
 

 *735
 
 Plaintiffs appeal from an order granting Defendant's motion for summary judgment on Plaintiffs' claims. Defendant cross-appeals from the same order which also granted Plaintiffs' motion for summary judgment on Defendant's counterclaim. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.
 

 I. Background
 

 Defendant Martha Cooper ("Owner") owns legal title to a certain single-family home (the
 
 *372
 
 "Property") that was secured by an adjustable rate mortgage. In 2011, Owner desired to sell the Property for a little over her mortgage balance, which was then approximately $366,000; however, the Property was in some disrepair, making it hard to sell.
 

 Plaintiffs Kent and Christy Lee ("Tenants") desired to purchase the Property, but their credit did not allow them to qualify for a loan in 2011.
 

 The parties, therefore, entered into an agreement styled "Lease and Option to Purchase Agreement" (the "Agreement") to allow Tenants to lease the Property for a term of four years (through June 2015), during which time Tenants could qualify for a loan and purchase the Property for a price equal to Owner's mortgage balance. The Agreement called for Tenants to make monthly rental payments equal to the Owner's mortgage payment, which would reduce Owner's mortgage balance. The rental payments would adjust as Owner's mortgage payment adjusted. The Agreement also called for Tenants to make an initial $31,500 payment as
 
 *736
 
 an "option fee." According to Tenants' deposition testimony, this "option fee" was applied to Owner's mortgage balance in order to reduce the monthly mortgage payment, and thereby reduce Tenants' rental payment to a more manageable level.
 

 Tenants remained in the Property past June 2015 without exercising their option to purchase the Property. Tenants also allegedly defaulted on their rental payments.
 

 In October 2015, Owner obtained an order of summary ejectment, which returned possession of the Property to her. Tenants did not appeal that order.
 

 Shortly thereafter, Tenants commenced this action, alleging various claims including a claim to recover "equity" that they accrued in the Property during the four years they made payments pursuant to the Agreement. Owner counterclaimed for unpaid rent and for damage to the Property.
 

 The parties filed cross motions for summary judgment. The trial court essentially dismissed all claims and counterclaims, entering summary judgment for Owner on Tenants' claims and entering summary judgment for Tenants on Owner's counterclaims. All parties appealed.
 

 II. Analysis
 

 A. Tenants' Appeal
 

 Tenants argue that the trial court erred in granting summary judgment for Owner on Tenants' claim to recover their "equity" in the Property that they accrued during the term of the Agreement. Specifically, Tenants argue that their Agreement with Owner entitled them to recoup "equity" they accrued in the Property in the event they did not exercise their option. We have reviewed the terms of the Agreement on this point and find them to be ambiguous. Therefore, we conclude that there is a genuine issue of fact. Accordingly, for the reasons stated below, we reverse the order granting summary judgment for Owner and remand for further proceedings.
 

 The Agreement involves both a lease and an option to purchase. An "option" is a contract where the owner of property gives the optionee a continuing offer to sell the property for a fixed period of time. Time is generally of the essence in an option contract such that the option expires if not exercised by the agreed upon date.
 
 Wachovia Bank v. Medford
 
 ,
 
 258 N.C. 146
 
 , 150,
 
 128 S.E.2d 141
 
 , 144 (1962).
 

 *737
 
 Where an option to purchase is combined with a residential lease, the agreement is subject to the provisions of Chapter 47G of our General Statutes, which was part of the General Assembly's Homeowner and Homebuyer Protection Act enacted in 2010.
 
 See
 
 N.C. Gen. Stat. § 47G (2015).
 

 In a typical lease/option agreement covered under Chapter 47G, a tenant has the right to purchase the property until the expiration of the option period. If the tenant otherwise defaults under the agreement
 
 during
 
 the term, the tenant does not lose his "equity of redemption"-that is, his option, unless the landlord follows the procedures contained in Chapter 47G.
 
 See
 
 N.C. Gen. Stat. § 47G-2(e). Typically, if the tenant fails to exercise the option within the time provided in the agreement, the tenant is not allowed
 
 *373
 
 to recover any money at the end of the term.
 

 The Agreement here, though, contains atypical language that suggests that Tenants could recover "equity" if they did not exercise their option during the term. There is other language, however, that is either conflicting or vague on Tenants' right to recoup "equity" in the event they did not exercise their option to purchase. The pertinent language in the Agreement is as follows:
 

 If the [Tenants] elect not to exercise the Option to Purchase or cannot exercise the Option to purchase after the four year term of the lease[,] the parties agree to the following:
 

 A) At the end of the lease, if [Tenants] cannot purchase the Property[,] the [Owner] may put the property up for sale and [Tenants] will remain as tenants [until the property is sold and continue to pay rent equal to Owner's mortgage payment].
 

 B) If the [Tenants] cannot complete the purchase of the property[,] the [Tenants] will have equity in the property (represented by the option fee) and [Owner] agrees to refund to the [Tenants] that equity which will be the sales price of $371,100.00 minus the loan payoff to [Owner's mortgage lender] less any seller fees associated with the sale.
 

 C) ... [Tenants] shall provide a $31,500 OPTION FEE to the [Owner] in consideration of executing said Option to Purchase Agreement contained herein. In the event that [Tenants] elect not to exercise the option to purchase the real property, the OPTION FEE will not be returned to the [Tenants] but will be treated in accordance with paragraph 3 below.
 

 *738
 
 (3) OPTION TO PURCHASE: It is agreed that ... [Tenants] may at any time during the term of this lease elect to purchase said property "as is" for the purchase price of $371,100.00.... In the event of such purchase, the purchase price shall be the then current first mortgage balance on the property plus any seller fees associated with the sale.
 

 These paragraphs can be interpreted in a variety of ways. In their deposition testimony, Tenants stated their understanding was that they had the option to purchase the property for Owner's mortgage balance and if they did not exercise their option, the Property would be sold and Tenants would be entitled to any sale proceeds (after paying off Owner's mortgage) up to $371,100 and that Owner would receive the remainder. Subparagraph A) appears to support this understanding, at least in part, in that it anticipates the Property being sold, but with Tenants to remain in the Property and continue to be responsible to pay Owner's mortgage until the Property was sold. Subparagraph A) is ambiguous, though, in that it does not state definitively what happens to the proceeds upon any sale. Do Tenants get any net amount up to $371,100? Who is responsible to bring money to closing should the sale price be less than Owner's outstanding mortgage balance?
 

 Subparagraph B) suggests that Owner could simply pay Tenants their equity without putting the Property on the market. However, some language suggests that the equity required to be paid by Owner is limited to the $31,500 "option fee," while other language suggests that the "equity" is any amount over the mortgage balance up to $371,100.
 

 But Subparagraph C) conflicts with Subparagraph B) by suggesting that Tenants are not entitled to recoup their $31,500 should they fail to exercise their option, but in such case the $31,500 option fee will be treated as set forth in Paragraph 3. Not surprisingly, though, Paragraph 3 does not contain any language to indicate what happens to the $31,500 option fee if Tenants
 
 fail
 
 to exercise their option. Rather, Paragraph 3 speaks to how the option would be exercised, but then gives two conflicting ways to calculate the purchase price under the option-stating the purchase price to be $371,100 and then stating the purchase price to be the then current balance on Owner's mortgage.
 

 In sum, there is language that supports Tenants' understanding of parts of their agreement with Owner. At the same time, though, the Agreement is silent on some aspects of Tenants' understanding; and there
 
 *374
 
 is other language which contradicts Tenants' understanding.
 
 *739
 
 Accordingly, assuming that the parties intended the relationship to be in the nature of a landlord-optioner/tenant-optionee relationship, then Tenants have no interest in the Property (as the option period has expired) but may be entitled to recoup money under the terms of the Agreement.
 

 We note that there is some evidence that the relationship between the parties was
 
 not
 
 that of a landlord-optioner/tenant-optionee, but rather that of a mortgagor/mortgagee, notwithstanding certain language in the Agreement that suggests otherwise.
 
 See
 

 Szabo Food v. Balentines
 
 ,
 
 285 N.C. 452
 
 , 461,
 
 206 S.E.2d 242
 
 , 249 (1974) ("It has long been the rule with us that in determining whether a contract is one of ... a lease with an option to purchase, or one of sale with an attempt to retain a lien for the purchase price, the courts 'do not consider what description the parties have given to it, but what is its essential character.' ") That is, there is evidence that the parties intended for the Agreement to work as a contract for deed. In other words, the agreement could be construed as a straightforward "purchase agreement," rather than an option to purchase. There is evidence that Tenants would, in fact, become equitable owners of the Property and
 
 indebted
 
 to Owner to make Owner's mortgage payments even beyond the four-year term of the Agreement, (see Subparagraph A) of Agreement), and that the indebtedness to Owner would be secured by the Owner's retention of legal title in the Property until Owner's mortgage was paid in full. Indeed, Tenants allege in their complaint that the Agreement provides them with "equity in the Property" and that Owner "holds the property in trust for [Tenants] to the extent of [Tenants'] interest[.]" Tenants testified in their deposition that they were, in effect, the owners because they were responsible for the Property in all respects and Owner had no interest in being a true landlord. The Agreement states that Tenants were responsible for all repairs, whereas in a true landlord/tenant relationship, the landlord would have obligations to maintain the dwelling.
 
 See
 

 N.C. Gen. Stat. § 42-42
 
 (providing that a residential landlord shall "[m]ake repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"). Further, there is evidence that Owner received her desired sale price when the Agreement was signed, which was $5,000 over her mortgage balance.
 

 If the relationship here is determined to be that of a mortgagor/mortgagee, then Tenants, in fact, continue to have an equitable interest in the Property itself: the right to redeem the Property for the amount of their "debt" to Owner. And any provision in the Agreement which requires Tenants to sell the Property to Owner or anyone else (e.g., Subparagraphs A) and B))
 
 may
 
 be viewed as an unenforceable clog on
 
 *740
 
 their equity of redemption.
 
 See
 

 Wilson v. Fisher
 
 ,
 
 148 N.C. 535
 
 , 540,
 
 62 S.E. 622
 
 , 624 (1908) (equity of redemption cannot be "clogged" by some contemporaneous agreement);
 
 Thorpe v. Ricks
 
 ,
 
 21 N.C. 613
 
 , 616 (1837) (disavowing any attempt to "clog" the equity of redemption). That is, these provisions may be viewed as a means by which Owner can strip Tenants' of their equitable interest in the Property outside the foreclosure process. Of course, if a mortgagor/mortgagee relationship exists, Tenants are now free to enter into any agreement regarding their equitable interest.
 

 We express no opinion as to the nature of the relationship between the parties. We merely hold that there is a genuine issue of material fact as to Tenants' claims.
 

 B. Owner's Appeal
 

 Owner argues that the trial court erred in granting summary judgment for Tenants on Owner's counterclaim for damages based on Tenants' failure to repair the Property. We agree. Specifically, there was some evidence that Tenants had the responsibility to make repairs to the Property and that certain repairs were not made. The nature of the parties' agreement on this point is unclear; and, therefore, summary judgment was inappropriate. Therefore, we reverse the trial court's grant of summary judgment on Owner's counterclaim for damages based on Tenants' alleged failure to repair the Property; and we remand the matter for further proceedings.
 

 *375
 
 We note that Owner also had a counterclaim for unpaid rent. However, Owner makes no argument in her brief regarding this counterclaim. As such, we affirm the trial court's order granting summary judgment as to Owner's counterclaim for unpaid rent.
 

 III. Conclusion
 

 We reverse the trial court's grant of summary judgment for Owner on Tenants' claims and remand for further proceedings not inconsistent with this opinion.
 

 We reverse the trial court's grant of summary judgment for Tenants on Owner's counterclaim for damages based on Tenants' alleged failure to repair the Property and remand for further proceedings not inconsistent with this opinion. And we also affirm the trial court's grant of summary judgment for Tenants on Owner's counterclaim for unpaid rent.
 

 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 

 Chief Judge McGEE and Judge DAVIS concur.